704 So.2d 576 (1997)
Elijah Jabber BROOKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-2191.
District Court of Appeal of Florida, First District.
August 26, 1997.
Rehearing Denied November 10, 1997.
Glen P. Gifford, Assistant Public Defender, Office of the Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Attorney General; Edward C. Hill, Assistant Attorney General, Office of the Attorney General, Tallahassee, for appellee.
PADOVANO, Judge.
Elijah Jabber Brookins, the defendant, appeals his conviction for first degree murder. Several arguments are presented in the appeal but only one merits discussion. The defendant contends that he did not knowingly and voluntarily waive his rights during a police interrogation and that his statement to the police officers should have been suppressed from evidence. Because the record supports the trial court's ruling that the defendant voluntarily waived his rights, we conclude that the statement was properly admitted and we affirm the defendant's conviction.
*577 On April 4, 1995, the defendant, then age sixteen, went with his mother to the Pensacola Police Department to make a statement concerning the shooting death of Michael Mobley. The defendant was advised of his rights and he then proceeded to explain that he killed Mobley in self-defense. According to Officer Robert Hurst, the defendant said that he had encountered Mobley on April 1, 1995, on a street corner and, after a brief exchange, Mobley reached into his pocket and pulled out a knife. The defendant told Hurst that he believed Mobley was about to rob him with the knife so he pulled out a gun and shot him in self-defense.
The next day Hurst and Detective Perry Knowles went to a neighborhood center and picked up the defendant and Michael Lindsey, a young man who had been with the defendant just before the shooting. The officers called the defendant's mother from the police station before the questioning began but they were unable to reach her. Lindsey spoke to the officers first, and his version of the homicide was incriminating to the defendant. He told the officers that the defendant had expressed his intention to rob someone and that Mobley was merely a victim of that plan. When the officers initially questioned the defendant, his statement was the same as it had been the day before. About fifteen minutes into the interview, the officers turned the tape recorder off and told the defendant about Lindsey's statement. The officers used Lindsey's statement to encourage the defendant to give them what they regarded as a more truthful version of the events.
While the tape recorder was off the defendant conceded that he had not acted in self-defense. The officers resumed the tape recording and the defendant then gave a version of the events consistent with Lindsey's statement. The defendant admitted that on the day of the shooting he and Lindsey had discussed committing a robbery. He explained that he had only intended to rob Mobley but that his gun had gone off accidentally. Following this second statement the defendant was arrested for murder.
The defendant moved to suppress his incriminating statement on April 5, 1995, on the ground that he had not made a voluntary and intelligent waiver of his rights. This argument was based in part of the fact that the defendant had an IQ of approximately 73, that he had the intellectual ability of a child of eight to ten years, and that he was functionally illiterate. The motion also stressed the defendant's age, the failure of the police to notify his mother that he was being interrogated, and the officers' awareness of his mental disability. Following an evidentiary hearing, the trial court found that the defendant had knowingly and voluntarily waived his rights. The motion to suppress was denied and the defendant's second statement was presented to the jury. At the close of the trial, the jury returned a verdict of guilty as charged of first degree murder.
We begin with the general rule that law enforcement officers must give a suspect an appropriate warning under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) before conducting a custodial interrogation. The officers may then proceed with the questioning only if the suspect has waived the right to remain silent and the right to counsel. A statement made after a waiver of rights can be admitted in evidence, but the burden is on the prosecution to show by a preponderance of the evidence that the waiver was knowingly and voluntarily made. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618; Taylor v. State, 640 So.2d 1127 (Fla. 1st DCA 1994).
Whether a waiver of Miranda rights was knowing and voluntary is an issue that has two components. First, the evidence must show that the waiver was a free choice by the suspect and that it was not produced by police intimidation, coercion, or deception. Second, the evidence must show that the waiver was made with a full awareness of the nature and consequences of the rights given up. Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); State v. Mallory, 670 So.2d 103 (Fla. 1st DCA 1996). Both issues are determined in the trial court by the totality of the circumstances test. Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).
Generally, a trial court's ruling on the voluntariness of a waiver of Miranda rights *578 will not be reversed on appeal unless the ruling is clearly erroneous. Thompson v. State, 548 So.2d 198 (Fla.1989). The appellate courts have shown less deference to trial courts on this issue if the decision was made on evidence presented in transcripts and not by the evaluation of live testimony, see, e.g., State v. Crosby, 599 So.2d 138 (Fla. 5th DCA 1992), but that exception does not apply here. In the present case, the trial court considered the testimony of the defendant and other witnesses in an evidentiary hearing. Because the trial court determined the validity of the waiver on the basis of live testimony, the general rule applies and the decision is subject to reversal only if it is clearly erroneous.
As for the first component of the issue, we find no evidence of coercion or improper conduct on the part of the law enforcement officers. It is true the officers turned the tape recorder off during the second interview and then confronted the defendant with the statement by Michael Lindsey to the effect that the defendant had planned to rob someone with a gun. However, the officers gave a detailed account of their interaction with the defendant during the time the tape recorder was turned off, and the trial court was entitled to accept their testimony. Contrary to the defendant's version of the events, the officers testified that they did not yell at the defendant during the questioning.
The defendant argues that the officers manipulated his sense of honor by implying that he had done the right thing initially by coming forward to report the shooting and that he was destroying the value of his good deed by concealing his motive and intent. An appeal such as this is not deceptive and it certainly does not rise to the level of coercion. We held in Mallory that a defendant's confession was not rendered involuntary merely because an officer agreed to make his cooperation known to prosecuting authorities and to the court. In the present case the officers may have encouraged the defendant by approaching the issue in a way that appealed to him, but it does not appear from the record that they engaged in any form of improper conduct.
Likewise, we reject the defendant's claim that his statement was rendered inadmissible by the officers' failure to contact his mother. Section 39.037(2), Florida Statutes, requires that a person taking a child into custody attempt to notify the parent, guardian or legal custodian of the child and "continue such attempt until the parent, guardian or legal custodian is notified or the child is delivered to an intake counselor ... whichever occurs first." This statute was designed to give parents notice of the whereabouts of their children. Doerr v. State, 383 So.2d 905 (Fla.1980). The statute establishes the initial procedure for detaining a child, but it does not prohibit police interrogation of a child before notice to the child's parent or guardian. Allen v. State, 636 So.2d 494 (Fla.1994); State v. Paille, 601 So.2d 1321 (Fla. 2d DCA 1992). As the supreme court explained in Doerr, the failure to notify a child's parent is relevant to the voluntariness of a statement made during police interrogation, but it does not require exclusion of the statement. Here the officers attempted to call the defendant's mother when they arrived at the police station. They did not continue to call her, but there is nothing in the record to suggest that her absence affected the voluntariness of the defendant's statement.
Turning now to the second component of the issue, we conclude that the defendant was aware of the nature and consequences of his waiver. It is true the defendant was disadvantaged by his age and his mental capacity. He had an IQ low enough to be considered "borderline mentally retarded", and, although he was sixteen years old, he was functioning at the level of a child of eight to ten years. These factors support the defendant's argument but they are not alone sufficient to justify reversal of the trial court's finding that his statement was made after a voluntary waiver. See, e.g., W.M. v. State, 585 So.2d 979 (Fla. 4th DCA 1991) rev. denied, 593 So.2d 1054 (Fla.1991) (the court held that a waiver of rights by a ten-year-old child with an IQ of 70 was valid). Here, the trial court found the waiver knowing and voluntary only after personally observing the defendant and evaluating his testimony at the hearing. Likewise, the trial court had an opportunity to consider the testimony of the officers who questioned the defendant and a psychologist who evaluated him.
*579 After the hearing, the trial court listened to the tape recordings of the statements made by the defendant on April 4th and April 5th. As the trial court explained, the tape recordings revealed that when the defendant was asked if he understood each of his rights, he answered "yes" to each question "very clearly." In the trial court's view, the tape recordings also showed that the officers did not ask suggestive questions and that they did not prompt the defendant to give any particular answers. Finally, the trial court found that the tape recordings revealed instances in which the defendant asked the officers for clarification when he did not understand their questions. These findings were considered in conjunction with the trial court's observation of the defendant and other witnesses at the hearing.
In summary, the record supports the trial court's finding that the defendant's statement was made after a voluntary waiver of his rights. On this record, we could not say that the trial court's finding is clearly erroneous. Therefore, we conclude the statement was properly admitted in evidence and that the defendant's conviction for first degree murder must be affirmed.
Affirmed.
WEBSTER and MICKLE, JJ., concur.