743 So.2d 65 (1999)
Kelly DOOLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1414.
District Court of Appeal of Florida, Fourth District.
August 25, 1999.
*66 Richard L. Jorandby, Public Defender, Margaret Good-Earnest and G. Adrian Barrett, Assistant Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Sarah B. Mayer, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Kelly Dooley (Dooley) appeals his conviction and sentence of three counts of sexual battery on a person less than twelve years of age and two counts of lewd acts on a child under sixteen years of age. He was sentenced to three concurrent life sentences for the sexual batteries and two concurrent fifteen year sentences for the lewd acts.
Dooley contends that he did not knowingly and voluntarily waive his rights during the in-custody interrogation and that his statements to Detective John Sanchez (Sanchez) should have been suppressed. We agree that the confession should have been suppressed. The failure of the trial court to suppress the confession resulted in prejudicial error requiring reversal for a new trial.
On April 18, 1997, B.D., the minor victim, informed the police that Dooley, her *67 father, sexually abused her over the span of three and one-half years. Later that same day, Dooley was transported to the Boca Raton police station and interrogated by Sanchez. The interrogation was tape recorded. Prior to questioning Dooley, Sanchez advised him of his Miranda rights as follows:
Sanchez: Kelly, I am required to warn you before you make any statements that you have the following constitutional rights. You have the right to remain silent and not to answer any questions. Do you understand that?
Dooley: Uh-huh. Yes, sorry.
Sanchez: Any statement you make must be freely and voluntarily given, do you understand that?
Dooley: Yeah.
Sanchez: You have the right to the presence and representation of a lawyer of your choice before you make any statement or during any questioning. Do you understand that?
Dooley: Yeah.
Sanchez: If you cannot afford a lawyer, you're entitled to the presence and representation of a court appointed lawyer before you make any statement and during any questioning. Do you understand that?
Dooley: Yeah.
Sanchez: If at any time during the interview you do not wish to answer any questions, you are privileged to remain silent. Understand that?
Dooley: Yeah.
Sanchez: I can make no threats or promises to induce you to make a statement. This must be done by your own free will.
Dooley: Yeah.
Sanchez: Any statement can be and will be used against you in a court of law. You understand that?
Dooley: Yeah.
Sanchez: Do you understand these rights as I just read them to you?
Dooley: Uh-huh.
Sanchez: You understand them?
Dooley: Yes, sir.
After detailing Dooley's constitutional rights and after confirming that Dooley understood these rights, Sanchez proceeded with the interview as follows:
Sanchez: Do you wish to waive your rights and speak to me without the presence of an attorney?
Dooley: Um, I don't wish to waive my rights.
Sanchez: By waiving your rights now doesn't mean that you waive them in the future. All you're saying here now is that you're talking to me without the presence of an attorney. If one is required later on, if that's your wish, one can be appointed to you. Do you understand that?
Dooley: Right. Um, I'm going to talk to you.
The interview continued and Dooley confessed. At the hearing on Dooley's motion to suppress the confession, the trial judge listened to the tape recorded portions delineated above. In denying the motion to suppress, the trial judge stated:
And my decision is that "Right, I am going to talk to you, yes" is spontaneous, voluntary and has all of the indicia in what I heard of a citizen who wants to talk to the police.
At trial, Dooley renewed his objection to the admission of his confession but the objection was overruled.
*68 The general rule is that law enforcement officers must give a suspect an appropriate warning under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before conducting a custodial interrogation. Officers may then proceed with the questioning only if the subject has waived the right to remain silent and the right to counsel. "A statement made after a waiver of rights can be admitted in evidence, but the burden is on the prosecution to show by a preponderance of the evidence that the waiver was knowingly and voluntarily made." Brookins v. State, 704 So.2d 576, 577 (Fla. 1st DCA 1997), review denied, 717 So.2d 528 (Fla.1998) (citations omitted).
Generally, a trial court's ruling on voluntariness of a waiver of Miranda rights will not be reversed on appeal unless the ruling is clearly erroneous. See id. at 577-78. Insofar as a ruling is based on an audio or videotape, the trial court is in no better position to evaluate such evidence than the appellate court, which may review the tape for facts legally sufficient to support the trial court's ruling. See Almeida v. State, 24 Fla. L. Weekly S331, S335 n. 9, 737 So.2d 520, 524 (Fla.1999).
The tape does not demonstrate that Dooley knowingly and voluntarily waived his Miranda rights. To be valid, a waiver must be the result of the suspect's free choice, not produced by police intimidation, coercion, or deception. "[T]he evidence must show that the waiver was made with a full awareness of the nature and consequences of the rights given up." Brookins, 704 So.2d at 577 (citations omitted).
Detective Sanchez explained to Dooley his Miranda rights and confirmed that Dooley understood those rights. Dooley clearly stated that he did not wish to waive those rights. At that point the interrogation was required to cease. See Miranda, 384 U.S. at 473-74, 86 S.Ct. 1602; Traylor v. State, 596 So.2d 957, 966 (Fla.1992).
In Traylor our supreme court held that: to ensure the voluntariness of confessions, the Self-incrimination Clause of Article I, Section 9, Florida Constitution, requires that prior to custodial interrogation in Florida suspects must be told that they have a right to remain silent, that anything they say will be used against them in court, that they have a right to a lawyer's help, and if they cannot pay for a lawyer one will be appointed to help them.
Under Section 9, if the suspect indicates in any manner that he or she does not want to be interrogated, interrogation must not begin or, if it has already begun, must immediately stop.
Id. at 965-66 (emphasis added) (footnote omitted).
Dooley's statement: "Um, I don't wish to waive my rights" certainly qualifies as an indication that he did not want to be interrogated. One of the rights that Sanchez informed Dooley that he had was the right to remain silent and not to answer any questions.
Traylor has recently been reaffirmed as the law of this state on whether a suspect has voluntarily waived his Miranda rights. See Almeida, 24 Fla. L. Weekly at S331, 737 So.2d at 523.
In Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the United States Supreme Court held law enforcement officers could continue interrogating a suspect when there has been an equivocal assertion of the suspect's Miranda rights. In State v. Owen, 696 So.2d 715 (Fla.), cert. denied, Owen v. Florida, 522 U.S. 1002, 118 S.Ct. 574, 139 L.Ed.2d 413 (1997), the Florida Supreme Court adopted the ruling in Davis. Based upon Davis and Owen, the state argues that it was permissible for Sanchez to continue interrogating Dooley because he allegedly made an equivocal assertion of his Miranda rights.
The state is correct that our supreme court adopted the holding in Davis; however, the state misconstrues Owen and *69 Davis. In Davis, the defendant had already been informed of his Miranda rights and a knowing and voluntary waiver had been obtained. The same was true in Owen. In Owen our supreme court held that:
police in Florida need not ask clarifying questions if a defendant who has received proper Miranda warnings makes only an equivocal or ambiguous request to terminate an interrogation after having validly waived his or her Miranda rights.

Id. at 719 (emphasis added). This case differs from Owen and Davis in that Dooley had not already waived his Miranda rights at the time he said "Um, I don't wish to waive my rights."
In footnote 7 in Almeida, Justice Shaw speaking on behalf of the court, makes abundantly clear the holding in Owen "applies only where the suspect has waived the right earlier during the session." The state cites no case, nor are we able to find any case, which holds that law enforcement officers may continue an in-custody interrogation on the basis of even an equivocal assertion of the suspect's Miranda rights, without first obtaining a valid waiver of those rights.
Deception cannot be used to obtain a waiver of a defendant's Miranda rights. See Ramirez v. State, 24 Fla. L. Weekly S353, S356, 739 So.2d 568, 575 (Fla.1999). The waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. See Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (citations omitted).
Sanchez's response to Dooley's assertion of his rights was the statement "[b]y waiving your rights now doesn't mean that you waive them in the future." This indicated that the defendant could speak with the officer without risk, that his later invocation of rights would prevent the statement from being used in court. The police may not use misinformation about Miranda rights to nudge a hesitant suspect into initially waiving those rights and speaking with the police.
The trial court listened to the taped interview and did not conclude that Dooley had been equivocal in invoking his Miranda rights, but that his statement, "Right. Um, I'm going to talk to you" was spontaneous and voluntary and had all the indicia of a citizen who wanted to talk to the police. This court has listened to the tape recording. We find that in light of the misinformation given by Sanchez, the trial court erred as a matter of law in concluding that Dooley had a "spontaneous and voluntary" desire to confess. A spontaneous statement connotes a statement occurring without external cause; self-generated or impulsive.[1] Dooley's so-called spontaneous and voluntary statement was in direct response to further interrogation and misinformation that was constitutionally impermissible.
Dooley raises as another point on appeal that the trial judge erred in allowing B.D. to testify via closed circuit television. The state concedes the trial court failed to make the findings required by section 92.54(1), Florida Statutes (1997). Upon retrial, the trial court should follow the requirements of section 92.54(1) before B.D. is permitted to testify via closed circuit television.
Reversed and remanded for new trial.
GUNTHER and GROSS, JJ., concur.
NOTES
[1] See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 2204 (1993).