743 So.2d 1203 (1999)
Vernon PADMORE, Appellant,
v.
STATE of Florida, Appellee.
No. 98-0662.
District Court of Appeal of Florida, Fourth District.
November 10, 1999.
*1204 Richard L. Rosenbaum of Law Offices of Richard L. Rosenbaum, Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ettie Feistmann, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, C.J.
Appellant was convicted of first degree murder, armed kidnaping, armed robbery, and grand theft. He appeals, claiming that the court below erred in finding him competent to proceed to trial, in failing to suppress his post-arrest statement to the police, and by admitting gruesome photographs into evidence at his trial. We affirm as to all issues.
Prior to trial, a hearing was held to determine whether appellant was competent to stand trial. The court appointed three experts for the defense, and one expert testified for the state. None of the experts questioned appellant's ability to relate the facts of the evening of the murder, nor did they dispute his ability to appreciate the charges against him or testify relevantly. One of the defense experts questioned whether appellant would be able to appreciate the nature of the adversary process. As an example, he testified that appellant did not understand the word *1205 "prosecutor" but did understand that the state attorney wanted to "lock him up." On the other hand, the state's expert testified that in her interview with the appellant, he evidenced a basic understanding of a plea, the role of witnesses, and the role of his attorney. At least one expert testified that appellant appeared to appreciate the possible penalties for his crimes. Although one expert was concerned with appellant's ability to maintain appropriate courtroom behavior, he showed no inability to behave properly during the competency hearing and the interviews with the court appointed experts.
Appellant was tested as having an I.Q. of 59, placing him in the mildly mentally retarded range. However, the psychologist who did the test did not believe that based on other criteria an overall diagnosis of mental retardation could be made. None of the defense experts made a diagnosis of mental retardation. While the defense experts recommended some form of competency training prior to proceeding to trial, the state's expert found appellant competent to stand trial, and the trial court agreed, concluding that appellant's problems were limited to complicated, technical matters which could be explained to him by his attorneys.
A defendant is competent to stand trial if he "`has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding... of the proceedings against him.'" Hardy v. State, 716 So.2d 761, 763 (Fla. 1998) (quoting Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). In determining whether the defendant meets this criteria, Rule 3.211(a)(2) of the Florida Rules of Criminal Procedure requires that a trial court, through its appointed experts, consider several factors:
(A) the defendant's capacity to:
(i) appreciate the charges or allegations against the defendant;
(ii) appreciate the range and nature of possible penalties, if applicable, that may be imposed in the proceedings against the defendant;
(iii) understand the adversary nature of the legal process;
(iv) disclose to counsel facts pertinent to the proceedings at issue;
(v) manifest appropriate courtroom behavior;
(vi) testify relevantly; and
(B) any other factors deemed relevant by the experts.
We review the trial court's competency determination in light of these specific factors. See Livingston v. State, 415 So.2d 872 (Fla. 2d DCA 1982). The evidence presented at the competency hearing, viewed in light of the factors enumerated in Rule 3.211(a)(2), support the trial court's finding of appellant's competence. We therefore affirm that ruling.
Appellant also argues that the trial court erred in finding that he knowingly, intelligently, and voluntarily waived his Miranda rights, particularly because of his limited I.Q., and the absence of his mother at the police interview. When determining the admissibility of a juvenile's confession, the court should look at the totality of circumstances surrounding the statement. In W.M. v. State, 585 So.2d 979, 980 (Fla. 4th DCA), rev. denied, 593 So.2d 1054 (Fla.1991), we quoted People v. Lara, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202 (1967), cert. denied, 392 U.S. 945, 88 S.Ct. 2303, 20 L.Ed.2d 1407 (1968):
"a minor has the capacity to make a voluntary confession ... without the presence or consent of counsel or other responsible adult, and the admissibility of such a confession depends not on his age alone but on a combination of that factor or such other circumstances as his intelligence, education, experience, and ability to comprehend the meaning and effect of his statement...."
Additionally, "[e]ven though the State bears a heavy burden in establishing that a waiver has been voluntarily made, the *1206 State must only establish by a preponderance of the evidence the voluntariness of a Miranda waiver." W.M., 585 So.2d at 983 (citing Balthazar v. State, 549 So.2d 661 (Fla.1989)).
The instant case is analogous to Brookins v. State, 704 So.2d 576 (Fla. 1st DCA 1997), rev. denied, 717 So.2d 528 (Fla. 1998). The defendant in Brookins argued that his age (16 years old), his low I.Q. (low enough to be considered "borderline mentally retarded"), the failure of the police to contact his mother, and the fact that he functioned at the level of an eight to ten year old precluded him from knowingly and voluntarily waiving his rights. See id. at 577-78. Despite these facts, the appellate court affirmed the trial court's finding that the defendant's statement was made after a voluntary waiver of his rights. See id. at 579. The Brookins court explained that the facts in that case:
[a]re not alone sufficient to justify reversal of the trial court's finding that [defendant's] statement was made after a voluntary waiver. Here, the trial court found the waiver knowing and voluntary only after personally observing the defendant and evaluating his testimony at the hearing. Likewise, the trial court had an opportunity to consider the testimony of the officers who questioned the defendant and a psychologist who evaluated him.
Id. at 578 (citation omitted).
Similarly, in the present case, appellant was 16 years old, he was intellectually slow, and police did not attempt to contact appellant's mother until more than two hours had passed in the interview. Sufficient competent evidence was introduced during the motion to suppress hearing, however, showing that appellant understood his rights and voluntarily waived them. For example, he had been read his rights and waived them on previous occasions. He was not threatened during his police interview, nor was he promised anything in exchange for his confession. His taped statement to the police demonstrates that appellant is able to plan, think rationally, and relate relevant facts in good detail when necessary. Additionally, law enforcement officers testified that appellant never interrupted them when he was read his rights, that appellant never told them that he did not understand what was being read to him, and that the officers explained appellant's rights in simple terms.
Finally, we have reviewed the photographs which appellant claims were so gruesome as to require a new trial and conclude that the admission of duplicative photographs in this case, even if gruesome, was harmless in light of the testimony, including the taped confession of appellant, and the other photographs admitted into evidence. See Thompson v. State, 619 So.2d 261, 266 (Fla.1993), cert. denied, 510 U.S. 966, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993).
Affirmed.
FARMER and STEVENSON, JJ., concur.