IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

SONNY ERIC PIERCE,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

     Appellant,

v.

CASE NO. 1D15-1984

STATE OF FLORIDA,

     Appellee.

_____/

Opinion filed June 6, 2017.

An appeal from the Circuit Court for Bay County.
Brantley S. Clark, Judge.

Michael Ufferman, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Michael Schaub, Assistant Attorney General, Tallahassee, for Appellee.

BILBREY, J.

     Sonny Eric Pierce appeals his judgment of conviction and sentences raising several issues. Because the trial court erred in denying Pierce's motion to suppress the statements made during his custodial interrogation, we must reverse the judgment, vacate his sentences, and remand for a new trial.

Following his arrest for his participation in a shooting incident, Pierce was subjected to questioning by a police detective. During the interrogation, Pierce was handcuffed. The State does not deny that Pierce was in custody and thus was not free to leave. The interrogation of Pierce was video recorded, and we have reviewed the video as well as the transcript of it. The interrogation began as follows:

Q. Sir would you state your name for me?

A. Sonny Eric Pierce.

Q. And Mr. Pierce would you raise your right hand for me? Do you swear this statement you'll give is the truth, the whole truth, nothing but the truth, so help you God?

A. I swear.

Q. Ok all right I got to just talk to you. We got to go over this real quick before we can discuss any parts of this case, okay? This is your Miranda form here. I'll read it to you and we'll go over anything. If you feel like we need to hit one of them again, we'll talk about it and explain it in detail, ok. All right first of all, you have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. Ok. If you cannot afford a lawyer, one will be appointed to you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time until you have consulted a lawyer. You understand that part? Ok if you would those last 2 sentences could you read those out loud?

A. I have read the Statement of my Rights and I understand what my rights are. At this time I am willing to answer questions without a lawyer present.

2

Q. Is that a true statement?

A. I don't know what I'm being charged for.

Q. Ok well I want to explain everything.

A. Okay.

Q. But I mean just for your, we'll go back over this one. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time until you have consulted a lawyer.

A. Ok.

Q. **Ok so it can't hurt you to talk with me but it's up to you.** If you don't want to say anything now, that's fine. We'll just do this and then just go with what happens, but if you want to talk about something [sic]. And I can explain to you some things; we can do it that way. I thought the whole reason why you wanted to talk to me is so we could talk and this [sic].

A. Yeah absolutely.

Q. Ok.

A. And I, I just, I don't know what I've done. And I don't want to get pinned doing something.

Q. Ok.

A. Do you know what I'm saying?

Q. **Yeah that's why if I was you, if that was the truth I'd want to talk.**

A. Absolutely. I mean I do and just, so.

Q. Ok so you are willing to talk ok. I need you to sign right there.

3

A. All right.

(Emphasis added). At that point, Pierce signed a waiver of <u>Miranda</u> rights.

After substantial probing by the detective, Pierce confessed to being part of a drug sale in the parking lot of a Home Depot. The deal went awry, Pierce claimed, when the buyers grabbed the contraband and began to drive away with it without paying. As the buyers sped towards him, Pierce told the detective that he commenced shooting at the car. He fled the scene in the car of his associates.

After Pierce was charged with attempted second degree murder with a firearm and shooting into an occupied vehicle, he moved to suppress, on several grounds, the statements he made during his police interrogation. The argument raised below and renewed on appeal is that the statements were obtained in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and <u>Traylor v. State</u>, 596 So. 2d 957 (Fla. 1992). After receiving the State's response, but without the testimony presented, the trial court denied the motion without making any findings of facts.[1]

---

[1] Generally, in reviewing a trial court's ruling on a motion to suppress, this court accords a presumption of correctness to the trial court's findings of historical fact, reversing only if the findings are not supported by competent, substantial evidence, but reviews de novo "whether the application of the law to the historical facts establishes an adequate basis for the trial court's ruling." <u>Parker v. State</u>, 873 So. 2d 270, 279 (Fla. 2004) (citing <u>Connor v. State</u>, 803 So. 2d 598, 608 (Fla. 2001)). However, the deference to a trial court's findings of fact does not fully apply when the findings are based on evidence other than live testimony. <u>Parker</u>; <u>Thompson v.</u>

The general rule is that law enforcement officers must give a suspect an appropriate warning under <u>Miranda</u> before conducting a custodial interrogation. <u>Brookins v. State</u>, 704 So. 2d 576 (Fla. 1st DCA 1997). Florida's Constitution also requires that prior to custodial interrogation in Florida suspects must be told that they have a right to remain silent, that anything they say will be used against them in court, that they have a right to a lawyer's help, and if they cannot pay for a lawyer one will be appointed to help them. Art. 1, § 9, Fla. Const.; <u>see</u> <u>Traylor</u>.

The United States Supreme Court recognized in <u>Miranda</u> that "[e]ven without employing brutality, the 'third degree' or [other] specific stratagems, . . . the very fact of custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals." 384 U.S. at 455. Because the "coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements" thus heightening the risk that a suspect will not be accorded his right not to be compelled to incriminate himself, the Court "laid down 'concrete constitutional guidelines for law enforcement agencies and courts to follow.'" <u>Dickerson v. United States</u>, 530 U.S. 428, 435 (2000) (quoting <u>Miranda</u>, 384 U.S. at 442). As Chief Justice Rehnquist explained in <u>Dickerson</u>:

---

<u>State</u>, 548 So. 2d 198, 204 n.5 (Fla. 1989) ("[T]he clearly erroneous standard does not apply with full force in those instances in which the determination turns in whole or in part, not upon live testimony, but on the meaning of transcripts, depositions or other documents reviewed by the trial court, which are presented in essentially the same form to the appellate court."). As noted, no findings of fact were made by the trial court in denying suppression.

5

> Those guidelines established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as "Miranda rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

Id. (quoting Miranda, 384 U.S. at 479). These warnings "have become part of our national culture." Id. at 443.

The determination as to whether a waiver of Miranda rights was knowingly and voluntarily made is a two-pronged inquiry:

> First, the evidence must show that the waiver was a free choice by the suspect and that it was not produced by police intimidation, coercion, or deception. Second, the evidence must show that the waiver was made with a full awareness of the nature and consequences of the rights given up.

Brookins, 704 So. 2d at 577 (citing Moran v. Burbine, 475 U.S. 412 (1986), and State v. Mallory, 670 So. 2d 103 (Fla. 1st DCA 1996)). Each step of this inquiry employs a totality of the circumstances test. Brookins, 704 So. 2d at 577 (citing Fare v. Michael C., 442 U.S. 707 (1979)); see also Moran, 475 U.S. at 1141, and North Carolina v. Butler, 441 U.S. 369, 374–75 (1979). The burden is on the State to show by a preponderance of the evidence that a waiver of a defendant's Miranda rights was knowingly and voluntarily made. Brookins, 704 So. 2d at 577. On

6

review, the question of the voluntariness of a confession is a legal one requiring independent review. Connor v. State, 803 So. 2d 598 (Fla. 2001).

The highlighted portions of the interrogation quoted above show that the detective advised Pierce that speaking to police would not cause harm, but in fact, would benefit him. This is a clear misstatement of Miranda.[2]

While it is true that a suspect need not be given all the information that "might" affect his decision to confess and that police do not have to supply a defendant "with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights," Moran, 475 U.S. at 422, it is also true that a waiver is not voluntarily and knowingly made if police have affected the ability of the suspect to understand the nature of the rights he is waiving. A waiver is not valid unless a suspect, "at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction." Id. As Pierce's waiver was procured by a misstatement as to effect of his waiver, it was not valid. See Ramirez v. State, 739 So. 2d 568 (Fla. 1999) (holding that any evidence that the accused was threatened, tricked, or cajoled into a waiver of Miranda rights will show that the defendant did not voluntarily waive his privilege); Dooley v. State, 743 So. 2d 65 (Fla. 4th DCA

---

[2] Whether the interrogating detective intimidated, coerced, or deceived Pierce, or merely inadvertently misstated Miranda, the second prong of the Brookins test was not met. Therefore, Pierce's waiver of his Miranda rights was not knowingly and voluntarily made. See Brookins, 704 So. 2d at 577.

1999).[3]  At trial, the State extensively utilized Pierce's incriminating statements. The denial of the motion to suppress therefore cannot be deemed harmless, and we are constrained to reverse the resulting convictions and remand for further proceedings without use in the State's case in chief of the statements made during the interrogation.  See Ramirez; Ross v. State, 45 So. 3d 403 (Fla. 2010).

Pierce also challenges in this appeal the denial of his motion to suppress the search conducted of his cell phone pursuant to a warrant.  We do not agree that the

---

[3] The case on which the dissent principally relies, United States v. Graham, 323 Fed. Appx 793 (11th Cir. 2009), is factually distinguishable from the case before us. In Graham, based on what the interrogating officer testified, a magistrate concluded that the defendant was not misled by the officer as to the effect of Miranda.  The magistrate concluded in pertinent part:  "Defendant does not argue—and the court declines to find—that this case is comparable to those in which officers told defendants that honesty would not hurt them, **in contradiction to the Miranda warning** that anything they said could be used against them in court."  323 F. Appx. at 4 (bold added).

In affirming the denial of the motion to suppress, the 11th Circuit observed in Graham: "Graham's incriminating statements were not the product of any deceptive comments made by Officer Conway.  As discussed above, it was Graham who came forward and wanted to cooperate, even before the officers asked him any questions. Thus, . . . this case does not present a situation where an officer was attempting to elicit a confession from a recalcitrant or confused suspect.  To the contrary, from the moment of his arrest, Graham had apparently made a calculated decision that his best option was to cooperate and hope for leniency."  Id. at 7.

There was no such desire to cooperate evident in the instant case.  Appellant was, instead, a "recalcitrant" as well as a "confused" suspect.  Repeatedly, he indicated to the interrogating officer that he was confused and that he did not want endanger himself.  Therefore, Graham is not on point.

8

affidavit filed in support of a search warrant failed to allege probable cause. The trial court correctly decided this issue.

Because we are reversing and remanding for a new trial, we need not reach the question of whether the trial counsel rendered ineffective assistance in failing to object to the verdict form which did not list the lesser included offenses in the order from most serious to least serious. See Sanders v. State, 944 So. 2d 203 (Fla. 2006). Additionally, while the scoresheet erroneously identified Pierce's aggravated battery conviction as a level 8, rather than a level 7 offense, this error is rendered moot given our disposition. Finally, we note, for the trial court's benefit, that the offense of shooting into an occupied vehicle is a non-qualifying offense under section 775.087(2), and thus, had the convictions been affirmed in this cause, consecutive sentencing was required. See William v. State, 186 So. 3d 989 (Fla. 2016).

Accordingly, the judgment of conviction is REVERSED, the sentences are VACATED, and the cause is REMANDED for further proceeding below consistent with this opinion.

WETHERELL, J., CONCURS, JAY, J., CONCURS IN PART and DISSENTS IN PART WITH OPINION.

9

JAY, J., concurring in part and dissenting in part.

After reviewing the video and transcript of Pierce's interrogation, I believe that Pierce's <u>Miranda</u> waiver was knowingly and voluntarily made, and, therefore, I would affirm the trial court's denial of his motion to suppress.

First, "[a] trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." <u>Pagan v. State</u>, 830 So. 2d 792, 806 (Fla. 2002). Thus, we are required to evaluate the exchanges between Pierce and Detective Wray in a manner that is "most favorable" to affirming the trial court's decision that Pierce voluntarily waived his <u>Miranda</u> rights. <u>Id.</u>

Second, in our evaluation of Pierce's interrogation, we should "'make every effort to eliminate the distorting effects of hindsight'" bias and in doing so, analyze Detective Wray's "performance from [his] perspective at the relevant time." <u>Martin v. State</u>, 107 So. 3d 281, 309 (Fla. 2012) (citations omitted). As <u>Martin</u> recognized, "[t]he fact that select statements from law enforcement officers may later be taken out of context and construed as misrepresentative, while relevant, is but one factor in a larger, totality of the circumstances evaluation of the interview." <u>Id.</u> at 310.

10

Third, as referenced by the majority, "[a] valid waiver of Miranda rights must . . . be knowingly and intelligently made." United States v. Gaddy, 894 F.2d 1307, 1312 (11th Cir. 1990) (citation omitted). "Whether a waiver is knowing and intelligent is determined by the particular facts and circumstances of the case, 'including the background, experience, and *conduct of the accused*.'" Id. (citation omitted) (emphasis added). "The relevant question is not whether the 'criminal suspect [knew] and [understood] every possible consequence of a waiver . . . ,' but rather whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.'" Garner v. Mitchell, 557 F.3d 257, 261 (6th Cir. 2009) (en banc) (quoting Colorado v. Spring, 479 U.S. 564, 574 (1987)).

In accord with these principles, I believe that Pierce's Miranda waiver was the product of his own "free and deliberate choice" and was not related to any purported coercion or deception by Detective Wray. Moran v. Burbine, 475 U.S. 412, 421 (1986). Specifically, Detective Wray's statements to Pierce were not coercive, and based on the video, Pierce's interview was conducted in a civil and non-confrontational manner. Also, there is no evidence that Pierce was deceived by the purported misstatements highlighted by the majority or that Pierce detrimentally relied upon those representations. See United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005) ("Sufficiently coercive conduct normally

11

involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise *that induces a confession*." (quoting United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir.1992) (emphasis added))); United States v. Small, 2013 WL 1400610, *5 (M.D. Fla. Feb. 11, 2013).

Moreover, as to Pierce's "awareness of the nature and consequences of the rights" that he waived, it is undisputed that the Miranda rights were accurately read to Pierce and, subsequently, Pierce voluntarily signed the proffered Miranda waiver. See Thomas v. State, 894 So. 2d 126, 136 ("Although a written statement is neither necessary nor by itself sufficient to establish waiver, it is strong proof that a waiver is valid."). While Detective Wray's statement that "it can't hurt you to talk with me" was not ideal, the statement was an apparent attempt to communicate that cooperating would be to Pierce's benefit—a permissible interrogation strategy. See United States v. Graham, 323 F. App'x 793, 800 (11th Cir. 2009). Because the statement was made shortly after a full and accurate recitation of Pierce's Miranda rights, common sense would suggest that Pierce would have asked about the conflict if he was confused about the discrepancy or, conversely, deferred signing the waiver until he was provided a clarification by Detective Wray. Neither event occurred.

From this record, the majority concludes that Pierce's waiver was "procured

by misstatement"—with a primary emphasis on the statement that "it can't hurt you to talk with me." However, there is no evidence that Pierce's decision to speak with Detective Wray was induced by Wray's statement that talking to Wray would not hurt Pierce. To the contrary, Pierce repeatedly confirmed that he wanted to speak with Detective Wray about Pierce's version of what occurred. By presuming a causal nexus between Pierce's decision to talk and Wray's purported misstatement—without evidence that Pierce was deceived, deluded, or misled by the statement—the majority has gone beyond what Miranda requires. See State v. Pitts, 936 So. 2d 1111, 1133 (Fla. 2d DCA 2008) ("[N]othing in the conduct of the police here shows that Pitts' waiver *resulted from* a coerced choice. The State has met its burden of establishing the voluntariness of the waiver." (emphasis added)).

Similar to this case, the defendant in Graham argued that his post-arrest statements were involuntary because an interrogating officer told him that cooperating with the police would be to his benefit. 323 F. App'x at 794. Specifically, the interviewing detective testified that he had an "understanding" with Graham that if Graham cooperated and provided the police with information, "*it certainly wouldn't hurt him*." Id. at 796 (emphasis added). In affirming the denial of Graham's motion to suppress, the Eleventh Circuit held that the detective's statements to Graham "merely confirmed what Graham already understood, namely, that he might be able to benefit in the future if he cooperated."

13

<u>Id.</u> at 800. In doing so, the court recognized that "'[n]o public policy should castigate a confession of crime merely because it may have been prompted by the hope that cooperation'" might increase the chances of a less severe sentence. <u>Id.</u> at 801 (quoting <u>United States v. Springer</u>, 460 F.2d 1344, 1347 (7th Cir. 1972)).

Like the defendant's disclosures in <u>Graham</u>, Pierce's "statements were not the product of deception or coercion, but were . . . the product of a voluntary and calculated decision to cooperate" because Pierce apparently believed it was in his self-interest to do so. <u>Id.</u> As a result, I would find a valid waiver of Pierce's <u>Miranda</u> rights. <u>See</u> <u>United States v. Sweetenberg</u>, 186 F. App'x 879, 883 (11th Cir. 2006) ("Defendant contends next that his Miranda waiver—given during the initial phase of his post-arrest interview, where he was asked about the offense for which he was arrested—was vitiated during the second, cooperation phase when agents indicated that, if Defendant helped law enforcement, his statements would be used *only for his benefit*. We disagree.") (emphasis added); <u>United States v. Jaswall</u>, 47 F.3d 539, 542 (2d Cir. 1995) ("An indication by the arresting officers to the defendant that his cooperation will help him is only one factor to consider in determining whether the defendant's waiver was given voluntarily. There is no inconsistency between the required warning that the defendant's statement may be used against him and a further statement that cooperation can help him. Both are true."); <u>Martin</u>, 107 So. 3d at 315-16 ("Law enforcement must be afforded some

14

leeway in how they conduct interrogations to ensure public safety and to further their objective of locating a missing person who might still be alive. The interview here cannot be characterized as so coercive as to render Martin's confession involuntary. Although some of the tactics and techniques used by the detectives may have been less than ideal, West and Wolcott did not directly threaten, deceive, or delude Martin into confessing. Therefore, we affirm the trial court's denial of Martin's motion to suppress."); cf. Hart v. Attorney Gen. of State of Fla., 323 F.3d 884, 894 (11th Cir. 2003) (finding that the voluntariness of the defendant's Miranda waiver was vitiated by a detective's statements—to a seventeen-year-old defendant—that having an attorney present would be a disadvantage and that "honesty wouldn't hurt him").

For all of the above reasons, I respectfully dissent from the reversal of the denial of the motion to suppress the statements made during Pierce's custodial interview.