BILBREY, J.
Sonny Erie Pierce appeals his judgment of conviction and sentences raising several issues. Because the trial court erred in denying Pierce’s motion to suppress the statements made during his custodial interrogation,- we must reverse the judgment, vacate his sentences, and remand for a new trial.
Following his arrest for his participation in a shooting incident, Pierce was subjected to questioning by a police detective. During the interrogation, Pierce was handcuffed. The State does not deny that Pierce was in custody and thus'was not free to leave. The interrogation of Pierce was video recorded; and we have reviewed the video as well’as the transcript of it. The interrogation bégan as follows:
Q. Sir would you state your name for me?
A. Sonny Eric Pierce.
Q. And Mr. Pierce would you raise your right hand for me? Do you swear this statement' you’ll give is the truth, the whole truth,- nothing but the truth, so help you God?
A. I swear.
Q. Ok all right I got to just talk to you. We got to go over this real quick before we can discuss any parts of this case, okay? This is your Miranda form here. I’ll read it to you and we’ll go over anything. If you feel like we need to hit one of them again, we’ll talk about it and explain it in detail, ok. All right first of all, you have the right to remain silent. Anything you say can' be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. Ok. If you cannot afford a lawyer, one will be appointed to you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time until you have consulted a lawyer. You understand that *1220 part? Ok if you would those last 2 sentences could you read those out loud?
A. I have read the Statement of my Rights and I understand what my rights are. At this time I am willing to answer questions without a lawyer present.
Q. Is that a true statement?
A, I don’t know what I’m being charged for.
Q. Ok well I want to explain everything.
A. Okay.
Q. But I mean just for your, we’ll go back over this one. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time until you have consulted a lawyer.
A. Ok.
Q. Ok so it can’t hurt you to talk with me but it’s up to you. If you don’t want to say anything now, that’s fine. We’ll just do this and then just go with what happens, but if you want to talk about something [sic]. And I can explain to you some things; we can do it that way. I thought the whole reason why you wanted to talk to me is so we could talk and this [sic].
A. Yeah absolutely.
Q. Ok.
A. And I, I just, I don’t know what I’ve done. And I don’t want to get pinned doing something.
Q. Ok.
A. Do you know what I’m saying?
Q. Yeah that’s why if I was you, if that was the truth I’d want to talk.
A. Absolutely. I mean I do and just, so.
Q. Ok so you are willing to talk ok. I need you to sign right there.
A. All right.
(Emphasis added). At that point, Pierce signed a waiver of Miranda rights.
After substantial probing by the detective, Pierce confessed to being part of a drug sale in the parking lot of a Home Depot. The deal went awry, Pierce claimed, when the buyers grabbed the contraband and began to drive away with it without paying. As the buyers sped towards him, Pierce told the detective that he commenced shooting at the car. He fled the scene in the car of his associates.
After Pierce was charged with attempted second degree murder with a firearm and shooting into an occupied vehicle, he moved to suppress, on several grounds, the statements he made during his police interrogation. The argument raised below and renewed on appeal is that the statements were obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Traylor v. State, 596 So.2d 957 (Fla. 1992). After receiving the State’s response, but without the testimony presented, the trial court denied the motion without making any findings of facts.[1]
The general rule is that law enforcement officers must give a suspect an *1221 appropriate warning under Miranda before conducting a custodial interrogation. Brookins v. State, 704 So.2d 576 (Fla. 1st DCA 1997). Florida’s Constitution also requires that prior to custodial interrogation in Florida suspects must be told that they have a right to remain silent, that anything they say will be used against them in court, that they have a right to a lawyer’s help, and if they cannot pay for a lawyer one will be appointed to help them. Art. 1, § 9, Fla. Const.; see Traylor.
The United States Supreme Court recognized in Miranda that “[e]ven without employing brutality, the ‘third degree’ or [other] specific stratagems, ... the very fact of custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals.” 384 U.S. at 455, 86 S.Ct. 1602. Because the “coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements” thus heightening the risk that a suspect will not be accorded his right not to be compelled to incriminate himself, the Court “laid down ‘concrete constitutional guidelines for law enforcement agencies and courts to follow.’ ” Dickerson v. United States, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (quoting Miranda, 384 U.S. at 442, 86 S.Ct. 1602). As Chief Justice Rehnquist explained in Dickerson:
Those guidelines established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as “Miranda rights”) are: a suspect “has the right to remain silent, that anything he says can be usee] against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.”
Id. (quoting Miranda, 384 U.S. at 479, 86 S.Ct. 1602). These warnings “have become part of our national culture.” Id. at 443, 120 S.Ct. 2326.
The determination as to whether a waiver of Miranda rights was knowingly and voluntarily made is a two-pronged inquiry:
First, the evidence must show that the waiver was a free choice by the suspect and that it was not produced by police intimidation, coercion, or deception. Second, the evidence must show that the waiver was made with a full awareness of the nature and consequences of the rights given up.
Brookins, 704 So.2d at 577 (citing Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), and State v. Mallory, 670 So.2d 103 (Fla. 1st DCA 1996)). Each step of this inquiry employs a totality of the circumstances test. Brookins, 704 So.2d at 577 (citing Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)); see also Moran, 475 U.S. at 421, 106 S.Ct. at 1141, and North Carolina v. Butler, 441 U.S. 369, 374-75, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). The burden is on the State to show by a preponderance of the evidence that a waiver of a defendant’s Miranda rights was knowingly and voluntarily made. Brookins, 704 So.2d at 577. On review, the question of the voluntariness of a confession is a legal one requiring independent review. Connor v. State, 803 So.2d 598 (Fla. 2001).
The highlighted portions of the interrogation quoted above show that the detective advised Pierce that speaking to police would not cause harm, but in fact, would benefit him. This is a clear misstatement of Miranda.[2]
*1222 While it is true that a suspect need not be given all the information that “might” affect his decision to confess and that police do not have to supply a defendant “with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights,” Moran, 475 U.S. at 422, 106 S.Ct. 1135, it is also true that a waiver is not voluntarily and knowingly made if police have affected the ability of the suspect to understand the nature of the rights he. is waiving. A waiver is not. valid unless a suspect, “at all times knew he could stand mute and request a lawyer, and that he was aware of the State’s intention to use his statements to secure a conviction.” Id. As Pierce’s waiver was procured by a misstatement as to effect of his waiver, it was not valid. See Ramirez v. State, 739 So.2d 568 (Fla. 1999) (holding that any evidence that the accused was threatened, tricked, or cajoled into a waiver of Miranda rights will show that the defendant did not voluntarily waive his privilege); Dooley v. State, 743 So.2d 65 (Fla. 4th DCA 1999).[3] At trial, the State extensively utilized Pierce’s incriminating statements. The denial of the motion to suppress therefore cannot be deemed harmless, and we are constrained to reverse the resulting convictions and remand for further proceedings without use in the State’s ease in chief of the statements made during the 'interrogation. See Ramirez; Ross v. State, 45 So.3d 403 (Fla. 2010).
Pierce also challenges in this appeal the denial of his motion to suppress the search conducted'of his cell phone pursuant to a warrant. We do not agree that the affidavit filed in support of a search warrant failed to allege probable. cause. The trial court correctly decided this issue.
Because we are reversing and remanding for a new trial, we need not reach the question of whether the‘trial counsel rendered ineffective assistance in failing to object to the verdict form which did not list the lesser included offenses in the order from most serious to least serious. See Sanders v. State, 944 So.2d 203 (Fla. 2006). Additionally, while the scoresheet erroneously identified Pierce’s aggravated battery conviction as a level 8, rather than a level 7 offense, this error is rendered moot given our disposition. Finally, we note, for *1223 the trial court’s benefit, that the offense of shooting into an occupied vehicle is a non-qualifying offense under-section 775.087(2), and thus, had the convictions been affirmed in this cause, consecutive sentencing was required. See William v. State, 186 So.3d 989 (Fla. 2016).
Accordingly, the judgment of conviction is REVERSED, the sentences are VACATED, and the cause is REMANDED for further proceeding below consistent with this opinion.
WETHERELL, J„ CONCURS, JAY, J., CONCURS IN PART and DISSENTS IN PART WITH OPINION.

. Generally, in reviewing a trial court's ruling on a motion to suppress, this court accords a presumption of correctness to the trial court’s findings of historical fact, reversing only if the findings are not supported by competent, substantial evidence, but reviews de novo “whether the application of the law to the historical facts establishes an adequate basis for the trial court's ruling.” Parker v. State, 873 So.2d 270, 279 (Fla. 2004) (citing Connor v. State, 803 So.2d 598, 608 (Fla. 2001)). However, the deference to a trial court’s findings of fact does not fully apply when the findings are based on evidence other than live testimony. Parker; Thompson v. State, 548 So.2d 198, 204 n.5 (Fla. 1989) ("[T]he clearly erroneous standard does not apply with full force in those instances in which the determination turns in whole or in part, not upon live testimony, but on the meaning of transcripts, depositions or other documents reviewed by the trial court, which are presented in essentially the same form to the appellate court.”). As noted, no findings of fact were made by the trial court in denying suppression.

. Whether the interrogating detective intimidated, coerced, or deceived Pierce, or merely *1222 inadvertently misstated Miranda, the second prong of the Brookins test was not met, Therefore, Pierce’s waiver of his Miranda rights was riot knowingly and voluntarily made. See Brookins, 704 So.2d at 577.

. The case on which the dissent principally relies, United States v. Graham, 323 Fed.Appx 793 (11th Cir. 2009), is factually distinguishable from the case before us. In Graham, based on what the interrogating officer testified, a magistrate concluded that the defendant was not misled by the officer as to the effect of Miranda. The magistrate concluded in pertinent part: "Defendant does not argue—and the court declines to find—that this case is comparable to those in which officers told defendants that honesty would not hurt them, in contradiction to the Miranda warning that anything they said could be used against them in court.” 323 Fed.Appx. at 797 (bold added).
In affirming the denial of the motion to suppress, the 11th Circuit observed in Graham: "Graham’s incriminating statements were not the product of any deceptive comments made by Officer Conway. As discussed above, it-was Graham who came forward and wanted to cooperate, even before the officers asked him any questions. Thus, ... this case does not present a situation where an officer was attempting to elicit a confession from a recalcitrant or confused suspect. To the contrary, from the moment of his arrest, Graham had apparently made a calculated decision that his best option was to cooperate and hope for leniency.” Id. at 801.
There was no such desire to cooperate evident in the instant case. Appellant was, instead, a "recalcitrant” as well as a “confused” suspect. Repeatedly, he indicated to the interrogating officer that he was confused and that he did not want endanger himself. Therefore, Graham is not on point.