# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-1168
_____

CURTIS HALL,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
Terry Lewis, Judge.

June 4, 2018


PER CURIAM.

    Curtis Hall appeals from his convictions and sentences for two counts of second-degree murder and two counts of armed robbery with a firearm, raising three issues for our consideration. Hall argues in his first issue that the trial court erred when it denied his motion to suppress statements made during a police interrogation. He argues in his third issue that the Criminal Punishment Code is unconstitutional as applied to juvenile defendants. We affirm for the reasons discussed below.[1]

_____

[1] We affirm as to the second issue without further comment.

I.

Hall was charged with two counts of first-degree murder and two counts of armed robbery with a firearm. It was alleged that Hall, who was seventeen years old at the time, robbed and killed two brothers who lived together in Hall's apartment complex. Hall was interviewed by the police on November 2 and November 15, 2012, regarding the crimes after witnesses placed him near the scene. Prior to trial, Hall moved to suppress statements he made to the police during the November 15, 2012, interrogation, including a confession to committing the murders, arguing that he did not knowingly and intelligently waive his Fifth Amendment[2] rights.

The trial court found that Hall understood his rights and validly waived them. Hall was found guilty of two counts of the lesser-included offense of second-degree murder and two counts of armed robbery. The jury made a specific finding that Hall did not have actual possession of a firearm during the crimes. Hall's scoresheet indicated a lowest permissible sentence of 369.15 months in prison and a statutory maximum sentence of life in prison. He was sentenced to fifty-five years in prison, to be followed by life on probation, with a chance for judicial review after fifteen years pursuant to section 921.1402, Florida Statutes (2014).

II.

In reviewing a trial court's ruling on a motion to suppress, "[t]he standard of review for the trial judge's factual findings is whether competent substantial evidence supports the judge's ruling" and the "standard of review for the trial judge's application of the law to the factual findings is de novo." *Butler v. State*, 706 So. 2d 100, 101 (Fla. 1st DCA 1998). This Court gives deference to the trial court's factual findings and credibility determinations based on live testimony but gives less deference when, based on the nature of the evidence under review, "the trial court does not have a special vantage point."[3] *Beckham/Tillman v. Bennett*, 118

---

[2] U.S. Const. amend. V.

[3] The interrogations at the police station were recorded and we have reviewed the video of the November 15 interrogation in

2

So. 3d 896, 898 (Fla. 1st DCA 2013) (quoting *State v. Sepanik*, 110 So. 3d 977, 978 (Fla. 2d DCA 2013)).

All persons have a constitutional right against self-incrimination in any criminal matter. U.S. Const. amend. V; Art. I, § 9, Fla. Const. The Supreme Court determined in *Miranda v. Arizona* that the State "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). A defendant may waive so-called *Miranda* rights, but only if the defendant is informed of those rights and "the waiver is made voluntarily, knowingly and intelligently." *Id.*

To determine whether a defendant's waiver of *Miranda* rights is voluntary, knowing, and intelligent, courts employ a "totality of the circumstances" test, which involves evaluation of factors including "(1) the manner in which the *Miranda* rights were administered, including any cajoling or trickery; (2) the suspect's age, experience, background and intelligence;" (3) whether the suspect's parents were contacted and the juvenile given an opportunity to consult with parents or an attorney before questioning; (4) whether the questioning took place in the police station; and (5) whether the interrogators secured a written *Miranda* waiver. *Ramirez v. State*, 739 So. 2d 568, 576 (Fla. 1999) (citations omitted). Where a confession is obtained after the administration of the *Miranda* warnings, the State bears a "heavy burden" to demonstrate by a preponderance of the evidence that the defendant knowingly and intelligently waived his or her privilege against self-incrimination and the right to counsel. *Id.* at 575.

By applying the *Ramirez* factors to Hall's November 15 interview, we conclude the trial court properly denied Hall's motion to suppress his post-*Miranda* statements. As to the manner in which his rights were read to him, Hall was interviewed at the police station while he was there based on an arrest for unrelated charges. Before any questioning occurred, an officer read Hall his

addition to the transcript of the suppression hearing.

3

*Miranda* rights and Hall executed a written waiver of those rights. While the record indicates the officer read the rights extremely quickly, this was the second time in two weeks that Hall had waived his *Miranda* rights and indicated a desire to talk to police regarding the murders. During the November 2 interview, an officer read Hall his *Miranda* rights and Hall signed a written waiver of those rights after informing the officers he had no questions about the waiver. During that interrogation, another officer reiterated that Hall had the right to refuse to answer questions. While we do not condone the officer's cursory review of Hall's *Miranda* rights during the November 15 interview, we agree with the trial court's assessment that when taken in context, the officer's actions were not coercive, misleading, or deceptive so as to undermine Hall's ability to understand the rights he was waiving.

Consideration of Hall's age, experience, and background weigh in favor of finding a voluntary waiver. When the murders occurred, Hall was within three months of his eighteenth birthday. He was also very experienced in the criminal justice system, having been arrested at least thirteen times, and as noted, he had been read his *Miranda* rights at least once two weeks prior to his November 15 interview. *See Carter v. State,* 697 So. 2d 529, 534 (Fla. 1st DCA 1997) (noting that prior experience with the criminal justice system is one factor in determining whether a waiver is knowing and voluntary). During that November 2 interview, Hall demonstrated his understanding of his right to terminate the interview. Additionally, the State presented evidence that during a police interview in an unrelated case in 2009, when Hall was thirteen years old, he refused to speak with police until his mother was present. At that time he was arrested and read his *Miranda* rights as well. There was testimony that he waived his *Miranda* rights in at least two other prior cases and decided to talk to police.

Factors weighing against a finding of a voluntary waiver are Hall's intelligence[4] and the fact that he was not able to consult with his mother prior to questioning. However, these factors alone are not dispositive of a whether a defendant can voluntarily waive

---

[4] The record indicates Hall had an IQ well below average and read at a level well below his age.

his rights. *See, e.g., Bevel v. State*, 983 So. 2d 505, 516 (Fla. 2008). This Court has found a valid *Miranda* waiver where a sixteen-year-old defendant was "borderline mentally retarded" and functioned at the level of a child between eight and ten years of age. *Brookins v. State*, 704 So. 2d 576, 578 (Fla. 1st DCA 1997). There, we noted that even though the defendant's mother was never contacted and the defendant had a low I.Q., the trial court found a knowing waiver after personally observing the defendant and evaluating testimony from the officers who questioned him and a psychologist who evaluated him. Here, the State introduced expert testimony that despite Hall's lower intelligence, he was capable of understanding his *Miranda* rights. Further, the video of Hall's interrogation does not indicate any confusion as to his rights. He was able to discuss the case with officers with a calm and conversational demeanor and provide relevant facts.

We reject Hall's contention that he was tricked by detectives and gave a confession only because they promised him he could go home if he did so. While the officers urged Hall to take control of his life and tell his side of the story, they did not promise Hall that he could go home if he confessed. To the extent Hall may have believed he could go home if he confessed, we agree with the trial court that this was due to wishful thinking on his part rather than deception or trickery by the officers. Likewise, nothing in the record suggests that the absence of Hall's mother impacted the voluntariness of Hall's waiver of his rights.

Given the totality of the circumstances, including the lack of threats or coercion, Hall's multiple prior waivers of *Miranda* in other cases, and other evidence that he understood his rights and the consequences of abandoning them, we hold that the trial court's finding of a voluntary, knowing, and intelligent waiver was proper. *See Padmore v. State*, 743 So. 2d 1203 (Fla. 4th DCA 1999) (holding that a sixteen-year-old defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights, although he was intellectually slow and police did not attempt to contact his mother until more than two hours into the interview; the defendant had been read his rights and waived them on previous occasions, he was not threatened during the police interview or promised anything in exchange for his confession, and his taped

5

statement demonstrated that he was able to plan, think rationally, and relate relevant facts in good detail).

## III.

In Hall's third issue on appeal, he asserts that the Criminal Punishment Code ("CPC") is unconstitutional as applied to juvenile offenders. Relying on *Graham v. Florida*, 560 U.S. 48 (2010), *Miller v. Alabama,* 567 U.S. 460 (2012), and related cases, he alleges the CPC scoresheet, which determines the lowest permissible sentence that must be imposed absent a downward departure, fails to allow a trial court to consider that juveniles are constitutionally different from adults for sentencing purposes.

The calculation of a lowest permissible sentence on the CPC scoresheet does not prevent the trial court from taking a juvenile's youth and its attendant characteristics into account when imposing a sentence. Under the CPC, the trial court may take any constitutionally permissible factor into account when sentencing a defendant to any term between the lowest permissible sentence and the statutory maximum. Furthermore, in response to *Graham* and *Miller*, the Florida Legislature adopted chapter 2014-220, Laws of Florida, which has been codified in sections 775.082, 921.1401, and 921.1402, of the Florida Statutes. That law provides for individualized sentencing consideration prior to the imposition of a life sentence on a juvenile offender and for judicial review of certain sentences imposed upon juveniles who commit capital, life, or first-degree felonies punishable by life. The record reflects that Hall was provided with an individualized sentencing hearing pursuant to section 921.1401, during which the trial court took into account Hall's age and the factors listed in section 921.1401(2) when imposing a sentence that was less than life in prison but well beyond the 369.15-month lowest permissible sentence. Finally, as noted, the trial court entered an order that Hall would be eligible for review of his sentence after fifteen years in prison pursuant to section 921.1402(c), Florida Statutes. At that time, the trial court will once again take into account Hall's "age, maturity, and psychological development at the time of the offense" when deciding whether to modify the sentence and allow Hall's early release. *See* § 921.1402(6)(f), Fla. Stat. (2014). As such, the lowest permissible sentence does not impermissibly prohibit

the court from considering Hall's youth. *Cf. Montgomery v. State*, 230 So. 3d 1256 (Fla. 5th DCA 2017) (twenty-five year mandatory minimum sentence imposed on juvenile defendant for discharging firearm not unconstitutional if the defendant is granted judicial review provided by section 921.1402 after twenty years).

## IV.

Given the facts of this case, we conclude based on the totality of the circumstances that the record supports the trial court's determination that Hall knowingly and intelligently waived his constitutional rights. We also reject Hall's claim that the Criminal Punishment Code is unconstitutional as applied to juvenile defendants. For the foregoing reasons, we affirm.

AFFIRMED.

RAY, BILBREY, and KELSEY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Candice Kaye Brower, Regional Conflict Counsel, Gainesville, and Michael J. Titus, Assistant Regional Conflict Counsel, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Trisha Meggs Pate, Assistant Attorney General, Tallahassee, for Appellee.