[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10969
_____

D.C. Docket No. 2:13-cr-00096-SPC-CM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BRIAN ROBERT HARLING,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 28, 2017)

Before TJOFLAT and ROSENBAUM, Circuit Judges, and REEVES,[*] District Judge.

PER CURIAM:

_____

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Defendant-Appellant Brian Robert Harling appeals his conviction and sentence for knowingly possessing materials depicting minors engaged in sexually explicit activity, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2).  He makes four arguments on appeal.  First, he argues that the district court erred in denying his motion to suppress five USB drives after the drives were seized and searched without a warrant.  Second, he asserts that the district court should have granted his motion for judgment of acquittal because the government failed to prove that he knowingly possessed the USB drives, that he knew that the visual depictions were of minors engaged in sexually explicit conduct, or that he actually appeared in any of the videos.  Third, he contends that the district court abused its discretion by refusing to give a "mere presence" jury instruction.  And finally, Harling argues that his sentence of 240 months' imprisonment followed by a lifetime of supervised release is substantively unreasonable.  After careful consideration, and with the benefit of oral argument, we affirm Harling's conviction and sentence.

## I.

### A. Facts[1]

In 2013, Nicole Dunwody[2] saw a listing on Craigslist advertising a condominium unit for rent in Fort Myers, Florida.  Harling occupied the unit at the time but was looking to rent it out because he had just purchased a new home.

---

[1] These facts are taken primarily from the hearing on Harling's motion to suppress.

Nicole decided to rent the unit from Harling and coordinated with him to move in her belongings.  Soon after she moved in, Nicole bumped the door frame of a closet in the residence and heard something fall to the floor.  She looked down and saw that three USB drives had fallen from the top of the door frame inside the closet.

Nicole took the three USB drives to her mother Ada Dunwody's house. There, Ada plugged the first of three drives into her computer, and large thumbnail images loaded onto the screen.  She and Nicole scrolled through the contents of the first drive and saw images of what they described as small children in unnatural, sexually suggestive poses engaging in sexually explicit conduct with adults.

After viewing at least thirty thumbnail images, Nicole decided she had seen enough and called the police.  Meanwhile, Ada continued to view the contents of the two remaining USB drives.  After scrolling through the contents of the second drive, which Ada also described as containing images and videos of young children in unnatural, sexually explicit poses, Ada estimated that she had seen well over 100 images and videos.  The third drive contained more videos, but it also had a file type that Ada did not recognize.  Afraid of inadvertently downloading something unknown onto her computer, Ada removed the third USB drive from her computer

---

[2] The fact in this case involve more than one person with the last name "Dunwody."  For clarity, we refer to each by her first name.

3

and placed all three USB drives in a plastic bag for delivery to the police. She did not really probe into the contents of the third USB drive.

Nicole and Ada agreed to meet Fort Myers Police Officer Domonic Zammit at Nicole's condominium. When Officer Zammit arrived, Nicole informed him that Harling owned the condominium unit and had resided in it before she did, a fact that Officer Zammit confirmed when he called and spoke with Harling over the phone. Nicole also gave Officer Zammit the plastic bag containing the three USB thumb drives and explained that she and her mother had seen, between the two of them, explicit images and videos of children engaged in sexual acts. Nicole then showed Officer Zammit the closet from which the three USB drives had fallen. When he looked up into the closet, Officer Zammit discovered two more USB thumb drives in the same location at the top of the door frame inside the closet.

Officer Zammit returned to the Fort Myers Police Department with the five USB drives and along with his supervisor, Sergeant Doro, reviewed them. They opened one image file and one video file on each of the five drives to confirm that all five contained child pornography. Officer Zammit then submitted the five drives into evidence, ending his involvement in the investigation.

Soon after that, Detective Meeks, a member of the computer-crimes unit, retrieved the five USB drives from the evidence custodian and, after reviewing

Officer Zammit's report, conducted a limited forensic preview to confirm the presence of child pornography on the drives and to determine the owner of them. He confirmed the presence of images and videos of child pornography on all five drives, including a series of images of a particular minor child being sexually abused by a particular adult male on the first USB drive. He also noted a file on the fourth drive that contained Harling's business card.

Detective Meeks observed that many of the images had file names in a sequential numerical order, which indicated to him that the images were homemade—rather than downloaded from the internet—and taken with a single camera. Because he knew from Officer Zammit's report that Harling was the previous resident of the condominium unit, Detective Meeks obtained Harling's driver's license photograph and confirmed that Harling was the adult in the series of pornographic images involving the particular minor child.

He then contacted the Department of Homeland Security ("DHS") for assistance in locating Harling. DHS agents accessed Harling's public Facebook page and found profile pictures of Harling that matched the adult male observed in the photographs contained on the USB drives, providing further confirmation that Harling was the adult male featured in the pornographic images on the USB drives. Detective Meeks then met with Nicole and Ada, who shared with him the specific details of what they had observed on the USB drives.

5

Law-enforcement officers eventually learned Harling's address and visited him at his home on July 11, 2013. After being advised of his rights, Harling agreed to speak with the agents. They showed him multiple images that they had downloaded from Facebook, of a young boy whom Harling identified as his step-grandson. That same boy was the minor child who appeared in the series of homemade pornographic images discovered on the USB drives.[3]

Later that same day, Detective Meeks prepared an affidavit for a search warrant to conduct a complete forensic examination of all five USB drives. His affidavit included the detailed descriptions conveyed to him by both Nicole and Ada regarding exactly what they had seen on the USB drives. After obtaining the warrant, Detective Meeks conducted a more thorough forensic examination of all five USB drives and found that they contained hundreds of images of child pornography and over forty videos, including hundreds of images of Harling sexually abusing his step-grandson.

On the basis of these findings, authorities applied for and were granted a second warrant to search Harling's residence for additional computer equipment and data, which they executed on July 12, 2013. Inside his home, authorities observed furniture, bedding, and other household décor that matched the furniture,

---

[3] Harling's adult son confirmed that the young boy from the pictures on the USB drives was Harling's step-grandson. He also confirmed that another minor child observed in the images on the USB drives, a young girl, was Harling's step-granddaughter.

6

bedding, and household décor that appeared in several photographs recovered from the USB drives. Those observations led authorities to obtain a third search warrant that same day to search Harling's residence for specific items matching items previously seen in the images and videos stored on the USB drives.

## B. Procedural History

A federal grand jury returned an indictment charging Harling with one count of knowingly possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). Harling moved to suppress the contents of the five USB thumb drives, as well as any evidence gathered from his residence. The district court denied Harling's motion to suppress.

Harling proceeded to trial. At the close of the Government's case, he moved for a judgment of acquittal, arguing that the evidence presented failed to establish that he possessed the USB drives. Harling also renewed his objections to the district court's denial of his motion to suppress. The district court denied his motions and his request for a "mere presence" jury instruction."

The jury found Harling guilty after a two-day trial. The Presentence Investigation Report ("PSI") prepared before Harling's sentencing hearing calculated an adjusted offense level of 44, which was treated as an offense level 43 pursuant to U.S.S.G. Ch. 5, Pt. A, comment n. 2. Harling did not have any prior criminal convictions and was assigned a criminal-history category of I. The

7

resulting guideline sentence was originally life in prison. But because the maximum term of imprisonment for a conviction under 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) is 20 years, Harling's guideline term of imprisonment was 240 months, with a supervised-release term of between five years and life.

Prior to his sentencing hearing, Harling filed a sentencing memorandum wherein he requested a sentence of no more than twenty years. At the sentencing hearing, neither the government nor Harling made any objections to the PSI. After considering the Sentencing Guidelines and the factors identified in 18 U.S.C. § 3553(a), the district court sentenced Harling to 240 months' imprisonment, followed by a lifetime term of supervised release. Harling raised no objections to his sentence. He now appeals his conviction and sentence.

## II.

### A. Motion to Suppress

On appeal, Harling argues that his rights under the Fourth Amendment were violated when law-enforcement officers seized and then searched his personal property without first obtaining a warrant. He makes the following arguments in support of his position: (1) he did not abandon the five USB drives, so he retained a reasonable expectation of privacy in them; (2) no exigent circumstances existed necessitating a search of the USB drives without first obtaining a search warrant; (3) the searches performed by law-enforcement officers before obtaining a search

8

warrant exceeded the scope of the private-party searches conducted by Nicole and Ada; and (4) the affidavits used to obtain the search warrants included false and misleading statements, rendering them void.

A district court's ruling on a motion to suppress presents a mixed question of fact and law. *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009). We review a district court's factual findings for clear error and its application of the law to those factual findings de novo. *Id.* In applying the law to the facts, we construe the facts in the light most favorable to the party that prevailed in the district court—in this case, the Government. *See United States v. Mathis*, 767 F.3d 1264, 1274–75 (11th Cir. 2014); *United States v. Laist*, 702 F.3d 608, 612 (11th Cir. 2012).

Courts generally prohibit the government from introducing at trial evidence gathered as a result of a search or seizure that violated the Fourth Amendment. *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362 (1998). But the Fourth Amendment applies to only governmental action; "it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as the agent of the Government or with the participation or knowledge of any governmental official." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (quotation omitted). Once a private individual, acting of her own accord, conducts a search—even one that frustrates a defendant's reasonable expectation of

privacy—the Fourth Amendment does not forbid the government from replicating the search, as long as government officials constrain their search to the parameters of the search conducted by the private individual. *United States v. Young*, 350 F.3d 1302, 1306–07 (11th Cir. 2003); *Jacobsen*, 466 U.S. at 115. As a result, "a warrantless law-enforcement search conducted after a private search violates the Fourth Amendment only to the extent to which it is broader than the scope of the previously occurring private search." *United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 2009 (2016), *cert. denied sub nom. Johnson v. United States*, 137 S. Ct. 34 (2016).

Here, Harling contests the search of all five USB drives—the three discovered and viewed by Nicole and Ada and the two later discovered in the same location by Officer Zammit and viewed by law-enforcement officers in the first instance. As an initial matter, we agree that Harling did not abandon the USB drives.

But Nicole and Ada are private citizens who acted of their own accord when they viewed the contents of the first two USB drives. Therefore, law enforcement's subsequent search of the first and second USB drives, after listening to Nicole and Ada describe in detail what they had observed, was not violative of the Fourth Amendment since it did not meaningfully exceed the scope of Ada's search. *See Jacobsen*, 466 U.S. at 119. The officers replicated a search already

conducted by private citizens who acted independently, observed what they thought to be child pornography, and shared their concerns with the officers, who then confirmed that the drives contained what Nicole and Ada reported.

With regard to USB drives three, four, and five, the issue is more complicated because it is unclear whether Ada actually observed any content on the third drive and uncontested that Nicole and Ada did not view any content on the fourth and fifth drives. While law enforcement's search of these drives without a warrant was a *per se* violation of the Fourth Amendment, the evidence obtained is nonetheless admissible under the independent-source doctrine. In the event that the government violates the Fourth Amendment in conducting an illegal search, "[t]he independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *United States v. Barron-Soto*, 820 F.3d 409, 415 (11th Cir. 2016) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)).

We apply a two-part test to determine whether the independent source doctrine operates to render evidence admissible regardless of whether the initial search violated the Fourth Amendment. *United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012).

> The first thing we do is excise from the search warrant affidavit any information gained during the arguably illegal initial entry and determine whether the remaining information is enough to support a probable cause

11

finding.  If the remaining or nonexcised information is enough to support a probable cause finding, the second thing we do is determine whether the officer's decision to seek the warrant was "prompted by" what he had seen during the arguably illegal entry.  To determine whether an officer's decision to seek a warrant is prompted by what he saw during the initial entry, courts ask whether the officer would have sought the warrant even if he had not entered.  If the officer would have done so, his decision to seek the search warrant is supported by an "independent source," and the evidence seized under the warrant is admissible regardless of whether the initial entry violated the Fourth Amendment.

*Id.* at 1260-61 (internal citations omitted).

The first question we ask then is whether, excluding any information gained from Officer Zammit's report and Detective Meeks's own preliminary forensic examination of the USB drives, probable cause still existed to support a search warrant for all five USB drives.  Detective Meeks testified, and his affidavit in support of the first search warrant reflects, that Nicole's and Ada's observations regarding the contents of the first two USB drives formed "much of the basis" of his affidavit.  These observations included information regarding specific file names, the approximate ages of the children involved, the unnatural and sexually explicit nature of the photographs and videos, and the presence of a specific adult male sexually assaulting a young child in at least one video.  This information alone, which we have already found to be properly gleaned as a result of the

12

private-party search doctrine, certainly suffices to support a finding of probable cause.

So we move on to the second step and ask whether Detective Meeks would have sought the search warrant even if he had not first read Officer Zammit's report and previewed all five USB drives himself. *Noriega*, 676 F.3d at 1261. The district court concluded in its order denying Harling's motion to suppress that Detective Meeks would have. Based on just the descriptions provided by Nicole and Ada, the district court concluded that a fair probability existed that contraband or evidence of a crime would be found on all five USB drives. Officers probed the contents of the drives before obtaining the search warrant but only to confirm the veracity of what Nicole and Ada had reported seeing, not to independently obtain sufficient probable cause for a search warrant. Because the private-party search conducted by Nicole and Ada provided an independent source for the probable cause necessary to issue a search warrant for all five USB drives, the Government has successfully demonstrated that the evidence would have been ultimately obtained independent of any initial violation of the Fourth Amendment. Thus, Harling's motion to suppress was properly denied.[4]

---

[4] Because we find that the affidavits used to obtain the search warrants included information lawfully obtained by Nicole and Ada, as private citizens, Harling's arguments regarding the validity of the search warrants are meritless. Additionally, we need not address Harling's argument concerning exigent circumstances because the issues raised are fully resolved through the application of the private-party search doctrine and the independent-source doctrine.

**B. Judgment of Acquittal**

Next, Harling asserts that the district court erred in denying his motion for judgment of acquittal as to Count One—possession of materials containing child pornography—because the government failed to prove that he knowingly possessed child pornography, that he knew that at least one of the performers in such visual depictions was a minor, or that he knew that the visual depictions were of minors engaged in sexually explicit conduct. In Harling's view, the government failed to meet its burden to show that he owned the USB drives or that he was the male in the images and videos.

We review de novo the district court's denial of a motion for judgment of acquittal, viewing the facts and drawing all inferences in the light most favorable to the government. *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002). To uphold the denial of a motion for judgment of acquittal, "we need only determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." *United States v. Hansen*, 262 F.3d 1217, 1236 (11th Cir. 2001) (quotation marks omitted).

Section 2252(a)(4)(B) makes it a crime to "knowingly possess[ ] … 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction" that has traveled through interstate commerce if "the producing of such visual depiction involves the use of a minor engaging in

14

sexually explicit conduct; and such visual depiction is of such conduct."  18 U.S.C. § 2252(a)(4)(B).  An act is done "knowingly" when it is performed voluntarily and intentionally, not because of mistake or accident.  *United States v. Woodruff*, 296 F.3d 1041, 1047 (11th Cir. 2002).  In the context of § 2252, the term "knowingly" refers to the defendant's knowledge of the fact that the material contains child pornography.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).

Upon review of the record, we conclude that the evidence was more than sufficient to support Harling's conviction.  The evidence showed that Harling, the owner and previous occupant of the condominium unit, possessed the USB drives found in the closet.  Harling also owned the same type of camera used to take the photographs discovered on the USB drives, was himself pictured in both the photographs and films engaging in sexually explicit conduct with minors, and even identified one of the young boys from the films on the USB drives as a boy he knew—a boy investigators later learned to be Harling's step-grandson. Additionally, furniture and architectural details from Harling's home matched the furniture and architectural details depicted in the photographs and videos found on the USB drives, and Harling's business card was found on the fourth USB drive.

From this evidence alone, a reasonable factfinder easily could have found Harling guilty of violating the statutes charged in Count One of the indictment.  In

15

short, the district court did not err in denying Harling's motion for judgment of acquittal.

### C. "Mere Presence" Jury Instruction

Harling also contends that the district court erred when it failed to give the jury a "mere presence" jury instruction in line with his defense that his mere presence in the condominium unit at some previous point in time did not necessarily mean that he was the individual who knowingly possessed the USB drives found in the closet. We review for an abuse of discretion a properly preserved claim that the district court omitted a jury instruction. *United States v. Morris*, 20 F.3d 1111, 1114 (11th Cir. 1994).

A district court abuses its discretion in failing to give a requested instruction if "(1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by the charge actually given, and (3) its subject matter dealt with an issue in the trial court that was so important that the failure to give it seriously impaired the defendant's ability to defend himself." *United States v. Paradies*, 98 F.3d 1266, 1286 (11th Cir. 1996). A theory-of-defense charge is not warranted if "the charge given adequately covers the substance of the requested instruction." *United States v. Ndiaye*, 434 F.3d 1270, 1293 (11th Cir. 2006).

16

We find no abuse of discretion in the district court's refusal to give Harling's requested mere-presence instruction. We first note that Harling never actually provided the district court with a proposed "mere presence" instruction; he merely requested that the district court provide one.

In any case, the instructions given by the district court substantially covered Harling's request. The court instructed the jury that to convict Harling, it had to find that he "knowingly possessed one or more matters containing visual depictions" of a minor engaging in sexually explicit conduct. The court defined "knowingly" as meaning the act "was done voluntarily and intentionally and not because of a mistake or by accident."

Having received these instructions, "the jury could not have attributed possession to [Harling] through his mere presence alone, because mere presence would not establish voluntary [and] intentional possession." *United States v. Woodard*, 531 F.3d 1352, 1365 (11th Cir. 2008). Under the given instructions, the jury could return a guilty verdict only if it found that Harling voluntarily and intentionally possessed the USB drives; the instructions did not allow a finding of guilt based on Harling's mere presence in the condominium where the USB drives were found.

## D. Sentencing

17

Finally, Harling argues that his sentence of 240 months' imprisonment, followed by a term of lifetime supervised release is substantively unreasonable because the sentence is greater than necessary to protect the public and further the goals of sentencing.  We disagree.

The reasonableness of a sentence depends upon the district court's application of the factors outlined in 18 U.S.C. § 3553(a).[5] *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).  We review the substantive reasonableness of a sentence for an abuse of discretion, vacating the sentence only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc).  The party who challenges the sentence bears the burden of demonstrating that the sentence is

---

[5] The relevant § 3553(a) factors include the following:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) to afford adequate deterrence to criminal conduct;
      (C) to protect the public from further crimes of the defendant; and
      (D) to provide the defendant with needed . . . treatment;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range . . . ;
(5) any pertinent policy statement . . . ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a).

18

unreasonable in light of the record and the § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

Here, the government asserts first that Harling's arguments with regard to his term of supervised release should be reviewed for plain error only since Harling failed to challenge the district court's imposition of a term of lifetime supervised release at sentencing, and second, that this Court should decline to consider his sentencing arguments under the doctrine of invited error because Harling invited the district court to impose a sentence up to and including the statutory maximum. But we need not determine whether a heightened standard of review applies here because Harling's arguments fail under even an abuse-of-discretion standard of review.

At sentencing, the district court specifically recited the § 3553(a) factors and then concluded that the guideline range was reflective of the "abhorre[nt]" conduct at issue. Noting the seriousness of the offense, the fact that Harling took advantage of children in his care, and Harling's failure to accept responsibility, the district court found a sentence at the statutory maximum to be appropriate. It is clear from the record that the district court considered and applied the § 3553(a) factors and weighed them appropriately. *See United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007) (finding that the weight given to any § 3553(a) factor is within the sound discretion of the district court). Harling's sentence was certainly

19

substantively reasonable.  And even if we did not agree with the district court's determination of the weight given to each factor, we could not substitute our judgment for that of the district court when the district court acted within the bounds of its discretion.  *Id.*; *see also Gall v. United States*, 552 U.S. 38, 51 (2007) ("The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").

## III.

For these reasons, we affirm Harling's conviction and his sentence of 240 months' imprisonment, followed by a lifetime term of supervised release.

**AFFIRMED.**

20