# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-5118

_____

THOMAS GERALD DUKE,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Clay County.
John H. Skinner, Judge.

September 14, 2018

WETHERELL, J.

Thomas Gerald Duke pled no contest to possession of a firearm by a convicted felon. As part of his plea, Duke reserved his right to appeal the denial of his dispositive motion to suppress the incriminating evidence found on several USB drives that had been stolen from him, his identification from the files on those drives, and the firearm seized from his vehicle upon his arrest. This is Duke's appeal.

As he did below, Duke argues on appeal that law enforcement officers violated the Fourth Amendment by opening and viewing the contents of the stolen USB drives without his consent because he had an expectation of privacy in the contents of the drives. We affirm because (1) contrary to Duke's argument, no Fourth

Amendment search occurred, and (2) even if a search occurred, it was lawful because it was based on the consent of the person who had possession of the drives and who the officers reasonably believed had the apparent authority to consent to a search of the drives.[1]

### Facts

On November 6, 2017, Duke reported that his vehicle had been burglarized. Duke claimed that several USB drives were stolen in the burglary, along with cash, laptop computers, and other items. However, the police report of the burglary did not list the USB drives amongst the stolen property.

A few days later, Mario Hampton was arrested on unrelated charges. After his arrest, Hampton consented to a search of his house and he specifically led the officers to an air conditioning vent where he had hidden some USB drives. He told the officers that this was the "mother lode" and that the drives contained "some sick shit." Hampton also told the officers that he had obtained the drives in exchange for drugs. The officers did not know the drives were stolen.

The officers inserted one of the USB drives into a police-issued computer. The drive was not password-protected. The officers opened a video file on the drive, which depicted what appeared to be a sexual battery because it showed "a white male strangle a . . . young oriental girl, to where she was unconscious and then he raped her." The officers did not look at any other files on the drive and immediately turned over all of the drives to a detective in the Sex Crimes Unit. The detective interviewed Hampton and questioned him further about the contents of the drives. During the interview, Hampton told the detective that he only viewed one video on the drives, which he described as showing a "dude with a girl . . . she looked like she was young" and "it just looked like . . .

---

[1] Based on this disposition, we need not address the trial court's conclusion that Duke lacked a reasonable expectation of privacy in the contents of the USB drives because they were not password-protected.

2

sick." Hampton then signed a written consent form authorizing the detective to search all of the USB drives.

Subsequent searches of the USB drives led law enforcement to identify the man in the video as Duke. A warrant was thereafter issued for Duke's arrest, and when the warrant was executed, a firearm was found in Duke's vehicle. Because Duke was a convicted felon, the State charged him with unlawful possession of the firearm.[2]

Duke filed a motion to suppress, arguing that the arrest that led to the firearm's discovery was unlawful because the arrest warrant was based on an affidavit that relied on evidence found in an unlawful warrantless search of the USB drives. Specifically, Duke argued that the search of the drives violated the Fourth Amendment because he had not abandoned the drives; he retained an expectation of privacy in the contents of the drives after they were stolen; he did not consent to the search or authorize Hampton to do so; and the officers knew that the drives were stolen and that Hampton had no authority to consent to a search of the drives.

The trial court denied the motion after a hearing. The court concluded that no Fourth Amendment search had occurred because (1) it was Hampton, not the officers, who violated Duke's expectation of privacy in the contents of the USB drives, and (2) Duke did not have a reasonable expectation of privacy in the contents of the drives because they were not password-protected. Duke thereafter pled no contest to possession of a firearm by a convicted felon, reserving his right to appeal the denial of his dispositive motion to suppress.

This appeal followed.

---

[2] The State also charged Duke with two counts of sexual battery, kidnapping, and domestic battery by strangulation, but those charges were dropped.

## Analysis

The trial court's ruling on the motion to suppress comes to this Court with a presumption of correctness. *See State v. Markus*, 211 So. 3d 894, 902 (Fla. 2017). Our standard of review is mixed: the trial court's ultimate ruling is a question of law that we review *de novo*, but the factual findings on which the ruling is based are reviewed for support by competent substantial evidence. *Id.*

The Fourth Amendment protects the "right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. For purposes of the Fourth Amendment, a "search" occurs only when an individual's reasonable expectation of privacy is infringed by an agent of the government. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *Id.* (internal quotations omitted). Thus, where a warrantless search by law enforcement is prompted by a prior search by a private party, the warrantless search does not violate the Fourth Amendment so long as it does not exceed the scope of the private party's search. *Id.* at 117; *see also United States v. Harling*, 705 Fed. Appx. 911 (11th Cir. 2017) (affirming the denial of a motion to suppress the contents of two USB drives that were reviewed by private parties before they were searched by the police, but reversing as to a third drive that had not been reviewed by the private parties before it was searched by the police), *cert. denied*, 138 S. Ct. 1312 (2018).

Duke had the initial burden to prove that the officers conducted a Fourth Amendment search when they opened and viewed the video file on the USB drive after Hampton told them that the drives contained "some sick shit." *Armstrong v. State*, 46 So. 3d 589, 593-94 (Fla. 1st DCA 2010); *see also Florida v. Riley*, 488 U.S. 445, 455 (1989) (O'Connor, J., concurring) (stating that defendant has burden of proving "a 'search' within the meaning of the Fourth Amendment even took place"). If Duke met that burden, then the State had the burden to prove that an exception

4

to the warrant requirement applies. *Kilburn v. State*, 54 So. 3d 625, 627 (Fla. 1st DCA 2011).

Duke failed to meet his burden to prove that a Fourth Amendment search occurred. The officers initially only viewed one file on one of the USB drives after being informed by Hampton that the drives contained "some sick shit." Although the record does not conclusively establish what "sick shit" Hampton viewed, it supports the inference that he was referring to the same video that the officers viewed. *See Ingram v. State*, 928 So. 2d 423, 428 (Fla. 1st DCA 2006) ("In reviewing the denial of a motion to suppress, we view the evidence and its reasonable inferences in a light most favorable to affirming the trial court's ruling."). Hampton later told the detective that he only viewed one video file on the drives, and his description of this video was consistent with what the officers described seeing in the one video that they opened before turning over the drives to the Sex Crimes Unit. Moreover, because Hampton only viewed one video, it is reasonable to infer that he directed the officers to the specific USB drive that contained the video that he reviewed. Accordingly, under these circumstances, the trial court did not err in concluding that the officers did not conduct a search within the meaning of the Fourth Amendment when they opened one of the USB drives and viewed a video file on the drive.

However, even if the officers' initial viewing of the video was a Fourth Amendment search of the USB drive, it was lawful because Hampton consented to the search. *See State v. Purifoy*, 740 So. 2d 29, 30 (Fla. 1st DCA 1999) ("It is well-established that a search conducted pursuant to valid consent is a recognized exception to the requirements of probable cause and a search warrant . . . ."). The fact that Hampton did not have *actual* authority from the owner of stolen USB drives, Duke, to give such consent is immaterial because it is well-established that law enforcement may rely on the consent given by a person with *apparent* authority, so long as that reliance is reasonable under the totality of the circumstances. *See State v. Young*, 974 So. 2d 601, 610 (Fla. 1st DCA 2008) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)).

Here, it was reasonable for the officers to rely on Hampton's apparent authority to consent to them viewing the contents of the USB drives. The officers did not know that the drives were stolen or that Hampton was not in lawful possession of the drives. The drives were safely hidden in his home, and he told the officers that he obtained the drives in exchange for drugs. The officers knew Hampton was a drug dealer and that drug users sometimes traded personal property for drugs. Under these circumstances, it was not unreasonable for the officers to assume that the person with whom Hampton traded was the original owner of the drives, thereby making Hampton the lawful owner of the drives. The fact that this turned out not to be the case does not undermine the reasonableness of the officers' assumptions at the time.

The subsequent searches of the USB drives were based on Hampton's written consent. The detective with the Sex Crimes Unit who obtained the written consent asked Hampton if the devices were stolen, but consistent with what he told the original officers, Hampton told the detective that he received the drives in exchange for drugs. Accordingly, under the circumstances, it was not unreasonable for the detective to conclude that Hampton had the apparent authority to consent to a search of the USB drives.

We did not overlook the fact that the detective told Hampton that law enforcement knew the USB drives were not his, but that does not undermine the reasonableness of the detective's reliance on Hampton's apparent authority to consent to a search of the drives. When the detective's statement is viewed in context, it is clear that it was merely intended to assure Hampton that even though he claimed ownership in the drives, he was not going to be charged with the acts depicted in the video because he was not in the video.

## Conclusion

For the reasons stated above, the trial court properly denied Duke's motion to suppress the evidence on the USB drives that ultimately led to the discovery of the firearm that served as the basis for the charge to which Duke pled. Accordingly, we affirm Duke's conviction and sentence.

6

AFFIRMED.

BILBREY and M.K. THOMAS, JJ., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

Curtis S. Fallgatter and Alex King of Fallgatter & Catlin, P.A., Jacksonville, for Appellant.

Pamela Jo Bondi, Attorney General, and Jason W. Rodriguez, Assistant Attorney General, Tallahassee, for Appellee.

7