# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2828
_____

WILLIAM THOMASON,

  Appellant,

  v.

STATE OF FLORIDA,

  Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

April 29, 2019

ROBERTS, J.

Following his conviction and life sentence for the murder of his infant daughter, the appellant raises two issues on appeal. First, he argues the trial court erred in denying his motion to suppress statements he made to law enforcement before and after his arrest. Second, he argues the trial court erred in denying his motion for mistrial. We find no reversible error and affirm.

*Facts*

Around noon on September 13, 2013, the appellant's girlfriend left their almost two-month-old daughter alone in the appellant's care. According to the girlfriend, the child was in good health when she left. When she returned around four p.m., the child was limp

and unresponsive with signs of seizure activity. The child was rushed to the hospital where she was eventually diagnosed with a subdural hemorrhage hematoma – a severe brain injury – caused by non-accidental trauma. The child was declared brain dead and died three days later.

At around seven p.m. on September 13, law enforcement arrived at the appellant's residence to question him. The appellant consented to a search of the home and told law enforcement that he did not know what happened to the child. The appellant agreed to go to the Sheriff's Criminal Investigations Division Office (the CID) for further questioning. He opted to ride with the investigators instead of following in his own car. At around ten p.m., an investigator and a sergeant conducted a recorded interview with the appellant. They began by telling the appellant he was not under arrest, he was free to leave at any time, and he could end the interview any time he felt uncomfortable. The appellant stated he was "absolutely" there of his own free will. The investigator reiterated that the appellant could end the interview at any time, and the appellant said, "Okay." The appellant hypothesized that the child's injuries could have been caused by his dog. The sergeant debunked this theory and hypothesized how the child could have been unintentionally injured by the appellant. The appellant said it seemed like he was being accused and, if he was, he would rather have a lawyer present. The investigator denied the appellant was being accused. The appellant said he would rather be with his daughter and had told them all he knew. The investigator and sergeant continued to theorize how the child could have been injured. The appellant stated he had "been through the system" and had the "vibe" as to where the interview was going. The investigator reiterated that the appellant was not under arrest and that the only reason he was being interviewed was because he was alone with the child. The appellant said, "Man, I got to get out of here. I can't do this." The investigator asked if the appellant wanted a drink, to which the appellant replied it was eleven p.m., he was done "just for right now," and he could not talk anymore. The interview was concluded.

Department of Children and Families (DCF) investigators then came in to conduct an additional interview with the

appellant. Around midnight, the investigator drove the appellant home.

The next day, the appellant was arrested for the murder of his daughter. The same investigator conducted another recorded interview with the appellant at the jail. The investigator read the appellant his *Miranda*[1] rights, which he indicated he understood and continued talking.

*Motion to Suppress*

The appellant moved to suppress his statements made on September 13 and 14. A hearing on the motion was held, during which the investigator testified that on September 13, the appellant was free to leave, voluntarily rode with them to the CID, and was free to use his cellphone during the entire interview. The sergeant testified the CID interview room door was locked because it was after-hours. It could be opened from the inside by pushing a button. The investigator testified he did not read the appellant his *Miranda* rights because the appellant was free to leave. The investigator acknowledged the appellant's statement about a lawyer, but stated the appellant did not ask to terminate the interview at that time and kept talking voluntarily. While he did accompany the appellant to the restroom, he only did so to show him where it was. When the appellant said he was done talking, the investigator ended the interview. The investigator testified he gave the appellant a ride home, which was recorded. He seized the appellant's cellphone, but kept it in evidence storage and did not search it until obtaining a search warrant on September 19.

The appellant's motion to suppress was denied in relevant part.[2] The trial court also granted the appellant's motion *in limine*

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] The trial court's denial of the portion of the motion seeking to suppress evidence collected from the appellant's cellphone is not challenged on appeal. The appellant's motion also sought to suppress statements made during the DCF interview. The trial court granted that portion of the motion.

3

to prohibit any reference to the appellant's potential drug use during trial.

*Jury Trial*

The appellant proceeded to a jury trial wherein the recorded September 13 interviews from the appellant's home and the CID and the September 14 jail interview were admitted into evidence during the investigator's testimony.

During the September 14 interview, the appellant was talking about the DCF interview and stated, "I was just straight up with them. I told them I wasn't going to take a drug test[.]" Defense counsel objected that that statement should have been redacted and moved for a mistrial. Defense counsel argued there was no way to cure the error particularly because the appellant had previously stated he did not "black out" when caring for the child. Regardless of whether the State had a theory of drug use or not, defense counsel argued the statement made any defense unbelievable because the jury could believe the appellant was under the influence of drugs and hurt the child. Counsel rejected a curative instruction because it would be inadequate and only highlight the error. The State responded that the error was not so prejudicial so as to vitiate the entire trial because its theory was that the appellant planned to harm the child, which it later attempted to prove by evidence of internet searches on shaken baby syndrome that the appellant had conducted before the child's death. The trial court denied the motion for mistrial and ordered the statement redacted in the transcript.

The jury found the appellant guilty of first-degree felony murder, and he was sentenced to life in prison without the possibility of parole.

*Motion to Suppress*

The appellant first challenges the denial of his motion to suppress statements made during the September 13 CID interview and the September 14 jail interview. We review the trial court's denial of the motion to suppress under a mixed standard with the ultimate ruling reviewed *de novo*, but the factual findings on which

4

the ruling is based are reviewed for competent, substantial evidence. *Duke v. State*, 255 So. 3d 478, 481 (Fla. 1st DCA 2018).

*September 13 CID Interview*

The appellant argues the trial court erred in not suppressing this interview because he was not *Mirandized* and the interview was clearly custodial in nature. Generally, law enforcement officers must administer *Miranda* warnings before conducting a "custodial interrogation." *Pierce v. State*, 221 So. 3d 1218, 1220-21 (Fla. 1st DCA 2017). What took place at the CID was an interrogation. *See State v. McAdams*, 193 So. 3d 824, 833 (Fla. 2016) (defining interrogation as "when a state agent asks questions or engages in actions that a reasonable person would conclude are intended to lead to an incriminating response"). Thus, for the appellant's pre-*Miranda* statements to be admissible in this context, the appellant must not have been "in custody." The trial court determined the appellant was not in custody at the CID. As pointed out in *McAdams*, "while precedent remains a guide, custody determinations are heavily fact dependent." 193 So. 3d at 833 (citing *Rigterink v. State*, 2 So. 3d 221, 246 (Fla. 2009)).

The test for whether a suspect is in custody is whether "based on the totality of the circumstances, a reasonable person would feel that his freedom of movement has been restricted to a degree associated with actual arrest." *Myers v. State*, 211 So. 3d 962, 972 (Fla. 2017) (citing *Caldwell v. State*, 41 So. 3d 188 (Fla. 2010)). In applying the test, courts have relied on the four factors articulated in *Ramirez v. State*, 739 So. 2d 568, 574 (Fla. 1999):

> (1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; [and] (4) whether the suspect is informed that he or she is free to leave the place of questioning.

"This is a conjunctive test, so no factor is solely determinative of whether [a defendant] was in custody for *Miranda* purposes." *Myers*, 211 So. 3d at 974. *Myers* elaborated on the proper analysis, stating;

5

Although the four *Ramirez* factors frame our analysis, "the ultimate inquiry is twofold: (1) the 'circumstances surrounding the interrogation;' and (2) 'given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.'" [*Ross v. State*, 45 So. 3d 403, 415 (Fla. 2010)] (quoting Y*arborough v. Alvarado*, 541 U.S. 652, 663 (2004)).

*Myers*, 211 So. 3d at 973.

### 1. The Manner in which Law Enforcement Summoned the Appellant for Questioning

The investigator's testimony established the appellant agreed to go to the CID for further questioning and voluntarily accepted a ride with the investigator. Factor one does not support a conclusion that the appellant was in custody.

### 2. The Purpose, Place, and Manner of the Interrogation

The appellant voluntarily walked through the security doors at the CID. As it was after hours, the CID door was locked. However, the sergeant testified the door could be opened by pressing a button inside the room. While questioning occurred at the CID, that factor alone is not determinative that the appellant was in custody. *See Wilson v. State*, 242 So. 3d 484, 493 (Fla. 2d DCA 2018).

At the outset of the interview, the appellant was repeatedly told he was free to leave and could end questioning at any time he felt uncomfortable. The appellant acknowledged he was there of his own free will. The appellant was also able to use his cellphone freely.

Investigators did emphasize that they needed to speak to the appellant, but they characterized it as needing to find out what happened to the child, so the doctors could provide the correct medical care. While the investigators rejected the appellant's hypothesis that his dog could have harmed the child, they did not

6

outright claim the appellant was the one who harmed the child. *Cf. Myers*, 211 So. 3d at 976 (finding factor two supported a custody determination where investigators used language like, "I need to know why you felt the necessity to plot and plan to have your husband being murdered at your son's hands," and told the appellant she was lying before she could respond). The investigators couched their questioning in terms of needing to find out what happened to the child so that the child could get appropriate medical care. The appellant asked if they wanted him to just admit that he "football kicked" the child to get the interview over with, to which the investigator said he did not want him to say that, he just wanted the truth.

While the questioning could be interpreted otherwise, the trial court reviewed the recorded interviews as part of ruling on the motion to suppress. The trial court's ruling is reviewed with deference on appeal. *Schoenwetter v. State*, 931 So. 2d 857, 866 (Fla. 2006) ("A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling.") (citation omitted). *See also Myers*, 211 So. 3d at 966 (noting the Fifth District did not afford the proper deference to the trial court's findings). Factor two does not support a conclusion that the appellant was in custody.

### 3. The Extent to which the Appellant was Confronted with Evidence of his Guilt

The investigators kept pressing the appellant to tell the truth to help the child. The investigators did confront the appellant with pictures of the child and told the appellant she was in serious condition. Again, they couched this in terms of needing to know what happened so that they could make the child better. At one point, the sergeant told the appellant someone had grabbed the child by the leg and it was the appellant. The appellant said he could have grabbed the child's leg, and the investigator asked if he could have been trying to prevent her from falling. While this line of questioning is suggestive of the appellant's guilt, it was not so confrontational as to outright accuse the appellant of harming the

7

child to the extent of causing brain damage. The appellant then stated he felt like he was being accused. The investigators denied that he was and attempted to rescue the interview. From that point forward, the appellant was less forthcoming, but he did continue to speak freely to the investigators. Factor three does not support the conclusion that the appellant was in custody.

### 4. Whether the Appellant was Free to Leave

The appellant was repeatedly told he was not under arrest and was free to leave. The appellant was never handcuffed. The appellant stated he agreed that he wanted to find out what happened to the child and that he was "on the team." Eventually he stated could not continue the interview. After that point, the interview concluded, and the investigator drove the appellant home. Unlike *Myers*, the appellant was not perfunctorily told he was "free to leave" and then aggressively confronted with his guilt. 211 So. 2d at 980. The investigators questioned the appellant with the stated intent of finding out what happened, not to immediately pressure the appellant to incriminate himself. Factor four does not support the conclusion that the appellant was in custody.

Under the totality of the circumstances, the trial court properly concluded the appellant was not in custody at the time of his pre-*Miranda* statements; therefore, those statements were admissible, and suppression of his September 13 CID interview was properly denied.

### September 14 Jail Interview

The appellant argues that his September 14 jail interview should have been suppressed because his invocation of the right to an attorney on September 13 cut off the investigators' right to reinitiate questioning. He argues any waiver of his *Miranda* rights at the outset of the September 14 interview was ineffective.

Toward the end of his September 13 CID interview, the appellant stated, "If I'm being accused of something, I'd rather have a lawyer present with me . . . if you're going to ask me anything else." The trial court found, and the appellant concedes, that this was an equivocal request for a lawyer. The appellant

argues, however, because he had not waived his *Miranda* rights when he made the equivocal request on September 13, questioning should have been terminated, and the fact that the appellant waived *Miranda* on September 14 is irrelevant.

As aforementioned, the investigators were not required to *Mirandize* the appellant on September 13 because he was not in custody. *See Caldwell*, 41 So. 3d at 198-99 ("We emphasize that *Miranda* warnings are not required in any police encounter in which the suspect is not placed under arrest or otherwise in custody under *Ramirez*."). As the appellant was not in custody, the investigators could have continued questioning him even if he requested a lawyer. *Id.* at 198 ("In a noncustodial setting, officers are not required to discontinue questioning when a suspect indicates that he wishes to exercise his right to remain silent, nor are they required to provide a lawyer on the suspect's request."). Nonetheless, the appellant requested to end the interview, and the interview was concluded on September 13.

When the investigator questioned the appellant again the next day, he was not reinitiating prohibited questioning because the appellant had not had his *Miranda* rights violated the day before. The appellant relies on *Traylor v. State*, to argue his equivocal request for an attorney when he was not *Mirandized* cut off the right to reinitiate questioning. 596 So. 2d 957, 966 (Fla. 1992). However, *Traylor* is not applicable here because the appellant was not in custody on September 13; therefore, he did not have any *Miranda* rights to invoke. The appellant's equivocal request for a lawyer on September 13 did not trigger any rights because it had no legal significance as he was not in custody.

The appellant was clearly in custody on September 14. He was properly *Mirandized* at the outset of the interrogation, and he waived his *Miranda* rights. Nothing that transpired during the September 13 interview had a bearing on this waiver. Suppression of his September 14 statements was properly denied.

*Motion for Mistrial*

The appellant's second argument on appeal is that the trial court erred in denying his motion for mistrial. This Court reviews

9

a trial court's ruling on a motion for mistrial under the abuse of discretion standard. *Morris v. State*, 219 So. 3d 33, 44 (Fla. 2017) (citing *Salazar v. State*, 991 So. 2d 364, 371 (Fla. 2008)). A motion for mistrial should only be granted when the error is so prejudicial as to vitiate the entire trial. *Morris*, 219 So. 3d at 44 (citing *England v. State*, 940 So. 2d 389, 401-02 (Fla. 2006)).

The statement about the drug test was very brief in the context of a long interview. The State's case was not that the appellant killed the child while under the influence of drugs. Rather, the State claimed that the appellant, based on his internet searches, planned to harm the child. Given that the case was not about drug use, it is unlikely that the statement had much effect on the jury's verdict. While the statement could implicate the appellant's character, the trial did not turn on the appellant's character. There was medical evidence of the child's injuries, the undisputed fact that the child was fine before she was left alone in the appellant's care, and evidence of the appellant's internet searches related to shaken baby syndrome as well as the appellant's own statements. Given this evidence, it is unlikely that the brief statement about refusing to take a drug test was so prejudicial as to vitiate the entire trial. We find the trial court did not abuse its discretion in denying the motion for mistrial.

*Conclusion*

For the reasons stated above, the appellant's judgment and sentence are AFFIRMED.

B.L. THOMAS, C.J., and OSTERHAUS, J., concur.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

10

Andy Thomas, Public Defender, Tallahassee; Terry P. Roberts, Special Assistant Public Defender, Law Office of Terry P. Roberts, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Steven Edward Woods, Assistant Attorney General, Tallahassee, for Appellee.